Cotton Oil Co., Ltd., vs. Steamer Red River et als.

No. 13,910.

SONIA COTTON OIL COMPANY, LIMITED, VS. STEAMER RED RIVER, CAPTAIN AND OWNERS.

## SYLLABUS.

1. The consignee is the owner of the goods until the contrary is shown, and he can sustain an action and sequestration against the master of the carrier for the recovery of the goods.

2. After the arrival of the steamboat at the landing at which the delivery was to be made, the goods not having been unloaded and the boat having left the landing, and the appearance being that it was on its way to another market with the goods, there was ground for a sequestration.

3. The captain's unwillingness to carry the goods to the place designated by the consignee at the landing, even if sustained by the contract between him and the consignee, did not afford good ground for not landing the goods and tendering them to the consignee to be delivered on payment of the freight.

4. On refusal of the consignee to accept goods, it devolves on the master of the carrier to have them placed, at the expense of the consignee, in a place where they will not be exposed to loss.

5. The terms of a bill of lading as written, to the extent that it is a contract and not a mere receipt for goods, are not to be changed by verbal testimony except in case of error or fraud.

6. If there was error in the clause by which the master bound himself to place the goods on the levee, the master, none the less had no right to retain the goods on board and leave the place of the goods' destination.

7. The tender made by the consignee to the master of the freight charges on the goods was sufficient, in view of the fact that the master's conduct and utterances plainly showed that he was unwilling to accept the charges, even if tendered in a strictly formal manner and though the tender included all that was due.

APPEAL from the Thirteenth Judicial District, Parish of Rapides —*Blackman, J.*

*John H. Overton* and *Robert P. & R. A. Hunter*, for Plaintiff, Appellee.

*White & Thornton,* for Defendants, Appellants.

The opinion of the court was delivered by

BREAUX, J. This was an action commenced in the District Court by plaintiff to recover possession of one hundred tons of cotton seed and to recover damages for the asserted wrongful detention of the seed.

A writ of sequestration was issued at the instance of plaintiff and the cotton seed sequestered. The defendant pleaded the general issue and especially pleaded that plaintiff was not the owner of the seed and denied that they had refused to deliver the seed and averred that they offered to deliver it at the landing. Defendants set up in their answer that no tender was made of freight charges.

Defendants, averring that the sequestration issued unnecessarily, reconvened for the amount of freight charges and damages for the alleged illegal sequestration. The testimony discloses that plaintiff was the consignee of the cotton seed shipped to its address on the steamer Red River and that it had sufficient interest to sue for the seed when the suit was filed. The bill of lading issued by the steamer Red River stipulated that the seed was to be delivered, without delay unless prevented, on the levee at Alexandria where the carrier's responsibility should cease, unto the Sonia Cotton Oil Company, Limited. There were about sixteen hundred sacks containing this seed. It required a great deal of hauling to haul them up.

The steamer, on her way down from up the river, landed in front of Alexandria on Sunday, the 4th day of November, 1900, at about noon, and began putting out the seed in question at the foot of a high bank on a sandbar. The Sonia Oil Company, Limited, claimed that the seed should be delivered on top of the bank or levee, for the reason that there was at the time a threatening rise of the river that would overflow the sandbar and injure the seed. The captain of the boat persisted in putting the seed on the bar. After a little time, and some talk between representatives of plaintiff and the captain, he stopped the work of unloading the seed and ordered the return to the boat of the few sacks that had been landed, about fifty sacks. Plaintiff urges that defendant said at the time that he stopped the unloading, that he would take the seed to New Orleans and sell it there. The boat and accompanying barge left the landing with the seed on board and crossed over from Alexandria to Pineville and was taking on other freight. Meanwhile plaintiff filed this suit and obtained a writ of sequestration. The boat then returned to the Alexandria side of the river and was tied up at the wharf, where it remained, owing to the sequestration, until three o'clock the next day. The seed, on Monday, was taken from the boat to the landing by order of the sheriff.

The evidence informs us that there is first a sandbar where the unloading of the boat was commenced when plaintiff's agent objected, and

in the direction of the city, after leaving the sandbar there is a ledge, and afterward a rising on to the levee. This is about all that need be said about the *locus* of the landing.

We take up in the first place for decision the question of the ownership of the seed. The issue is not directly raised and is before us only on a plea of general denial. Defendant is not greatly concerned in matter of the ownership of the seed. It claims the freight from plaintiff and also claims that it has done everything it was called upon to do in carrying out a contract of affreightment. These defenses are not consistent upon their face, with the defense that plaintiff is not the owner. Besides, the consignee named in the bill of lading is, for all purposes, considered as the owner of the goods and the carrier is entitled to treat him as the owner until the contrary appears. The shipment in itself, until it is shown that the consignee is not the owner, vested him with the title of owner. Hutchinson on Carriers, § 130. There is no evidence before us going to prove that the property was not owned by plaintiff. On the contrary, all tends to show that plaintiff was the owner.

This brings us to a consideration of the testimony upon which the writ of sequestration was issued. This testimony has bearing upon the merits of the case as well as upon the right to the writ of sequestration.

After the difference had arisen between plaintiff and defendant regarding the sale and proper place to land the goods, the defendant did not stand upon the right he claimed to deliver them upon the sandbar to which we have before referred. He immediately ordered the sacks containing the seed to be returned to the boat. He made no offer to the plaintiff to deliver them or the least attempt at tender of his property to plaintiff. The conduct and utterances of defendant were such as to give rise to the apprehension that he would take the goods out of the jurisdiction of the court. After they had been returned to the boat, it left the landing and crossed to the other bank. In our judgment, defendant should have made a tender of the goods in order to sustain his rights under the contract. Plaintiff was entitled to the cotton seed and upon defendant's failure to deliver it, plaintiff could resort to a suit to compel its delivery. When the goods are not accepted by the consignee, it devolves upon the carrier to put them in a place where they will not be exposed to loss. When this is done, his obligation to do, under the contract, is at an end. He is then no longer liable under his contract of affreightment. Delivery must be made at a proper place

and in a proper manner. Here there was not a persistent and complete attempt at performance. From all appearances, the destination of the goods was being changed when process issued. "The destination of the goods, when owned by the consignee, cannot be changed without his consent." Hutchinson on Carriers, § 135.

The terms of the bill of lading gave rise to the next issue before us for consideration. These terms on the face of the bill, bound defendant to place the goods on the levee at Alexandria. But it is urged on the part of the defense that this stipulation was an error on the part of the carrier; that it was not possible, consistently with the interest of any public carrier, to carry the goods from the boat to the top of the levee; that this clause in the bill did not cover obligations covered by any custom; that the place at which defendant offered to land the goods was the usual place. The testimony on this particular point is conflicting. Plaintiff contends that in view of the rise in Red River which was coming on, that the landing at that place was not safe. The cause for apprehension on this score is sustained by the weight of the testimony. Granted that it was extremely inconvenient and more expensive than usual to carry the goods to the top of the levee, it does appear that, under the circumstances, defendant should have carried out the conditions of the contract as written as near as practicable. We have not found that this was attempted. The defendant commenced to unload on the line of the sandbar near the water and the testimony does not disclose that it was the intention then to place them anywhere else.

Mr. Hutchinson, in his work cited *supra*, says that where the contract of carriage specifies the wharf, dock, or other landing place at which the delivery shall be made, the contract must of course govern in this respect, unless some other place be substituted by the parties. § 366.

In Hunter and Macauley vs. Mississippi Central R. R. Co., this court held that a bill of lading to the extent that it is a receipt may be explained, while that part of it which is a contract cannot be explained by parol testimony. The bill of lading, to the extent that it confesses the delivery and acceptance of the goods by the carrier is a receipt In other respects, it is a contract, and the contract particularly covers the obligation of carrying the goods to destination and of delivering them to the consignee. From that point of view, the carrier was bound to carry the merchandise to Alexandria and there deliver it in accordance with the terms of the bill of lading. Hutchinson, § 126.

In the absence of fraud or error, a conclusive presumption arises in

support of the bill of lading as written, but if error was committed, as contended, by including terms in the bill of lading binding the carrier to deliver the goods on the top of the levee, the carrying part of the obligation may be explained. Taking the foregoing as true, that error in the bill of lading may be explained. None the less the defense urged is not sustained, for the reason that there was no right in the defendant to retain the goods. This question was carefully considered and determined by the Supreme Court of the United States in the case of Modecai vs. Lindsey, 5 Wallace, 481. With reference to the right of the carrier to retain the goods until the charge for the freight is paid, Mr. Justice Clifford, for the court, said: "His right to do is beyond doubt, but he cannot detain the goods on board the ship until the freight is paid, as the consignee or owner of the cargo would then have no opportunity of examining their condition. Delivery on the wharf, in the case of goods transported by ships, is sufficient under our law, if due notice be given to the consignees and the different consignments be properly separated so as to be open to inspection and conveniently accessible." McCullough vs. Hall, 66 Maryland.

By the contract, the cargo was to be delivered at Alexandria. The arrival of the vessel at the wharf and the landing of a few sacks which were returned to the steamboat on the order of the captain was not a compliance with the carrier's obligation, even if the captain was entirely in the right regarding the place selected by him to put the seed. There was not even a partial compliance with the terms of the contract.

One of the issues before us is whether an actual tender of freight charges should have been made. The testimony shows that there was a seasonable offer to pay the amount due. The defendant positively declined to listen to any offer of payment. The captain was intent upon retaining the goods and carrying out his views of responsibility under the contract. He refused to accept the tender of payment, not because insufficient, but on other grounds entirely. One should not be required to do a vain thing. It is manifest that had the full amount been tendered in currency of well known legal tender, it would have been refused. Besides, before completing performance by a required delivery or effort to deliver the goods, the defendant was not entitled to any tender at all.

For reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed.

Rehearing refused.