No. 3253

**Second Circuit**

**WILLIAMSON v. NATL. BENEFIT LIFE INS. CO.**

(April 9, 1931. Opinion and Decree.)
(May 20, 1931. Rehearing Refused.)
(June 22, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Herndon & Herndon, of Shreveport, attorneys for plaintiff, appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendant, appellee.

McGREGOR, J. This is an action by the plaintiff, Lucien W. Williamson, against the defendant, National Benefit Life Insurance Company, a corporation operating under a charter obtained in accordance with the laws of the United States. The domicile of the defendant is in the city of Washington, D. C., but it is engaged in the general life insurance business throughout the country and particularly in Caddo par-

ish, La. The plaintiff was appointed assistant manager of the Shreveport office in accordance with the terms of a written contract of employment signed by both parties, to become effective as of November 2, 1925. Paragraph 34 of the contract reads as follows:

"That in consideration of the services herein described being satisfactorily performed, and this agreement being fulfilled by me upon the terms and conditions herein stated, I shall receive a salary at the rate of $90.00 per month, payable in semi-monthly installments on the fifteenth and last days of each month."

Paragraph 1 contains the following stipulation:

"This appointment may also be revoked at the pleasure of the Company without notice to me previous to said revocation. * * *"

On December 7, 1926, the defendant addressed the following letter to plaintiff, which letter was received on December 13, 1926:

"Please take notice that your contract with this Company as Assistant Manager, bearing date of December 11th, 1925, has been cancelled, per its provisions, to become effective as of December 15, 1926.

"You will please surrender all property of the Company in your possession to Supervisor H. W. Gore, upon the relinquishment of your office and make full report to him of all monies collected.

"It however, will be agreeable with the Company for you to resume an agency connection. As to this phase, of the work, you may see Supervisor Gore.

"With appreciation for any and all past services rendered, we are."

On November 10, 1926, the plaintiff subscribed for two shares of the capital stock of the defendant, National Benefit Life Insurance Company, at $55 per share. In the written application for the said shares, the plaintiff agreed to pay for them at the rate of $10 per month beginning December 15, 1926, and on the 15th of each succeeding month until fully paid, said payments to be deducted from the plaintiff's salary check to become due at those respective dates; so that, when the defendant issued and mailed the plaintiff's check for salary up to December 15, 1926, it was for $35 instead of $45. When plaintiff received the letter of December 7 on December 13 giving him notice of the cancellation of his contract as assistant manager, to take effect December 15, 1926, he immediately wrote a letter to the defendant at Washington, D. C., canceling his subscription for the two shares of the capital stock of the defendant company. This letter reached the office at Washington on December 15, too late for the $10 already deducted out of his salary to be included in the salary check, but the company acknowledged receipt of the letter at once and agreed to refund the $10 that had been retained out of the salary check. This letter of the defendant in reply to plaintiff's reads as follows:

"Your message of December 13th addressed to Mr. R. H. Rutherford has been referred to us and we beg to advise that prior to receipt of this message the Shreveport payroll had been made up and all checks had been forwarded to reach Shreveport by the morning of December 15th. You will no doubt note a deduction of $10.00 was made from your December check and you will please be advised that this amount has been placed to your credit instead of your stock subscription and will be refunded with your final settlement."

Plaintiff contends that his contract of employment was a monthly contract, and that it could not be terminated except at the end of a month. He therefore demanded payment for the latter half of De-

cember, 1926, in the sum of $45, in addition to the refund of the $10 agreed to by the defendant. At the beginning of his employment a rate book was delivered to plaintiff by defendant, for which the plaintiff deposited with the defendant the sum of $2. Plaintiff also demanded the return of this amount, and defendant admitted the correctness of the claim. Since the defendant refused to recognize plaintiff's right to $45 salary for the latter half of December, 1926, the plaintiff brought suit for the $10 and the $2, both of which were admitted to be correct and due by the defendant, and also for $45 claimed for salary for the latter half of December, 1926. And, in addition to his demand for the said $57, he demanded the penalties provided by Act No. 150 of 1920 of the General Assembly of Louisiana. On these issues the case went to trial. Judgment was rendered in favor of plaintiff for the sum of $57, with interest and costs, but his demand for penalties was rejected. The plaintiff appealed from the judgment of the lower court, and the defendant answered the appeal and asked that the judgment of the court be reversed and that the demands of the plaintiff be rejected.

All the rights of the plaintiff are governed entirely by the written contract under which he sues the defendant. That contract plainly provides:

"This appointment may also be revoked at the pleasure of the Company without notice to me previous to said revocation. * * *"

A careful reading of the contract clearly shows that it was not entered into for any definite term and that it stipulated that the plaintiff was to be paid for his services *"at the rate of $90.00 per month."* (Italics ours.)

Under the reservations of the right of revocation quoted above, the defendant had a right at its *pleasure* to *revoke* the contract at any time. The defendant was clearly within its rights in revoking the contract on December 7; and was specially considerate of plaintiff in making the revocation effective as of December 15 instead of immediately, as it had a right to do under the express terms of the contract signed by both parties. Under this view of the case plaintiff was not entitled to any salary for the latter half of December. The refund of the $10 which had been held out as payment on stock subscription and the $2 for the rate book deposit were temporarily withheld pending a final settlement. The record discloses that the plaintiff was short in several of his settlements with the defendant, and that fact alone would justify the withholding of these amounts pending a final settlement. Act No. 150 of 1920 is a harsh remedy and a penal statute, and will not be enforced in a case of this kind, where there is a strong equitable defense against the enforcement of the penalty. Not only did the defendant have an absolute right to revoke the contract at its pleasure without any particular cause, but in addition it had the right to discharge the plaintiff for a plain violation of his obligation to remit each week all moneys received by him.

For the reasons assigned, the judgment appealed from is amended by reducing the amount of the same from $57 to $12, with legal interest on $10 from December 15, 1926, and on $2 from December 17, 1926, and as amended the judgment is affirmed; the costs of the lower court to be paid by the defendant, and those of this court by the plaintiff.