## GODFREY v. LOUISIANA OIL REFINING CORPORATION.

### No. 5153.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 6, 1935.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

M. C. Trichel, Jr., of Shreveport, for appellee.

TALIAFERRO, Judge.

We find in the record a written opinion of the learned trial judge, which clearly and correctly reflects the facts and issues of the case. We agree with his finding on the questions of fact involved and are of the opinion he has properly applied the

law to them. We here quote in full said opinion:

"This suit was brought by Ralph D. Godfrey to recover of the defendant the sum of $149.76, together with legal interest, alleged to be due by the defendant by reason of the defendant's failure to pay him wages due him, within twenty-four hours of his discharge from its service on January 24, 1935. The sum now demanded being on the basis of 78 cents per hour, six hours per day, six days per week, from the date of his discharge until February 22, 1935, the date upon which this suit was filed.

"The plaintiff had been employed by the Louisiana Oil Refining Corporation for a period of ten years and about four months, when at 9 o'clock on the night of January 24, 1935, Mr. Louis Lyons, an employee and agent of the defendant, went to Mr. Godfrey's residence, called him from his bed, and notified him that he was discharged, due to a reduction in the force.

"At the time of his discharge, Mr. Godfrey was entitled to receive $37.44, for forty-eight hours' service; and in turn was indebted to the Louisiana Oil Refining Corporation in the sum of $23.46 for gasoline, oil, tires, etc., purchased from the Loreco filling stations.

"At the time of his discharge, the plaintiff, after deducting sums due by him for gasoline, oil, tires, etc., was entitled to receive a balance of $13.98. Mr. Lyons, however, tendered him a check for $9.94. The tender was refused by Mr. Godfrey, the plaintiff.

"Precisely what took place at the time of the tender is in some doubt. The plaintiff himself says that he objected to the amount of the check tendered because he knew it was not enough.

"The defendant contends that the check was rejected because it took into account deductions made on account of sums due the defendant for oil, gasoline, tires, etc.

"In our opinion, it makes no difference what the real reason was for Mr. Godfrey refusing the tender. He was justified in refusing a tender of an amount which was $4.04 less than that due him.

"On the next day after his discharge, plaintiff went to the defendant's place of business, where he was usually paid, and demanded payment in full. The defendant's agent tendered him the same check for $9.94 which had been offered to him

the night before and refused. This tender he again refused, stating it was wrong. The tender just described took place on Friday.

"On the following day, which was Saturday, Mr. Godfrey was again tendered the $9.94 check by employees of the defendant company, and he again refused to accept it as not being the correct amount due him.

"On the following Monday, which was January 28th, a check for $4.04 was received by Mr. Godfrey through the mails. In the meantime Mr. Godfrey had sought legal advice and had been advised that he was not obligated to accept payment until the full amount due him was tendered.

"On receipt of the $4.04 check, he again sought legal advice, and it appears that he was advised to hold the check for a few days in order to give the defendant company an opportunity to pay the balance of $9.94, which had been three times refused by the plaintiff as not being the correct sum due.

"From the foregoing statement, it is at once apparent that the defendant at no time made any offer to pay the plaintiff the full sum due him. If the plaintiff was justified in refusing to accept the $9.94 first offered him, much more so was he justified in refusing to accept the $4.04.

"It may perhaps be assumed that the defendant at the time of mailing the $4.04 check was under the impression that Mr. Godfrey had the other check in his possession. As a matter of fact, Mr. Godfrey did not have in his possession the check for $9.94 when he received the check for $4.04, and the defendant's agents who were handling the matter are bound to have known that. Evidently there was some discussion amongst them which resulted in a rechecking of the company's account with Mr. Godfrey, resulting in the discovery that an error had been made which was intended to be corrected by the check for $4.04.

"No one of the various employees of the defendant who testified in the case ever made, or attempted to make, any explanation as to why a check for the full amount due Mr. Godfrey was not sent him following his refusal, at separate times, to accept either of the checks which were tendered him.

"It is not contended by defendant's able counsel that the defendant has not vi-

olated, in the handling of this matter, Act No. 150 of 1920. The defendant's contention is that the defendant has an equitable defense by reason of the fact that the check for $9.94 tendered was tendered in error of the actual amount due Mr. Godfrey.

"Act No. 150 of 1920, § 1, provides: 'It shall be the duty of every person, individual, firm or corporation employing laborers or other persons of any kind whatever when they have discharged said laborer or other employee, to within twenty-four hours after discharged pay the laborer or employee the amount due him or them under the terms of his or their employment, whether by the day, week or month, upon demand being made by the said discharged laborer or employee, upon his employer, at the place where said employee or laborers is usually paid.'

"In this case, Mr. Godfrey made the demand required of him by the law, yet he was never tendered full payment until after this suit had been filed.

"That portion of the statute (section 2) dealing with penalty reads as follows: 'Any individual, firm, person or corporation employing laborers or others in this state who shall fail or refuse to comply with the provisions of section 1 of this Act, shall be liable to the said laborer or other employee for his full wages from the time of such demand for payment by the discharged laborer or employee until the said person, firm or corporation shall pay or tender payment to the amount due such laborer or other employee.'

"Counsel for the defendant contends that the defendant is not liable because it is contended that the defendant tendered the plaintiff the full amount due him. The defendant did tender the plaintiff $9.94 at the time of his discharge, and at one time tendered him $4.04; but the plaintiff did not have in his possession the check for $9.94 when the check for $4.04 was tendered him.

"It must be assumed that the defendant later ascertained, if it did not know at the time of tendering the $4.04 check, that the plaintiff had not retained the check for $9.94.

"Counsel for defendant says that Mr. Godfrey did not point out the mistake in his check. A sufficient answer to that is that Mr. Godfrey did not keep the books; and while he said he knew that neither of the checks tendered him rep-resented the correct amount due him, he did know that the sum due him was greater than the amount tendered him.

"Act No. 150 of 1920 is a rather harsh statute, and the courts have refused to enforce it where the equities of the case have favored the defendant. 

"Counsel cites the cases of Sonia Cotton Oil Co. v. The Red River, 106 La. 42, 30 So. 303, 87 Am. St. Rep. 293; State v. Police Jury, 120 La. 163, 45 So. 47, 14 L. R. A. (N. S.) 794, 124 Am. St. Rep. 430; and also the case of Oller v. Bender (La. App.) 146 So. 780. All of these cases do support the contention that wherever equities favor the defendant, the statute will not be applied, and so it results that what we must determine here is the question of whether or not the equities of the case are with the defendant or with the plaintiff.

"It may be that there is room for honest differences of opinion on this point. This court has gained the impression from hearing the testimony, and since the case was tried having read all of it again, that the defendant's agents and employees who handled this matter handled it rather carelessly; and we might add, also, in a rather callous manner.

"We say the matter was handled carelessly because no one of the various employees who handled portions of it seemed to know enough about what was due Mr. Godfrey to offer him the full amount due him. When he refused to accept partial tenders of the amount due him, they seemed satisfied to let the matter rest when he returned the two checks. If the responsible agent of the company, whose duty it is to see that discharged employees are paid, had given the matter diligent attention, both checks would have been returned to the plaintiff, or a separate check covering the full amount due him.

"We remarked above that it appeared to us that the matter had been handled callously. Mr. Godfrey had been an employee of the defendant for more than ten years. He was called out of bed after he had retired and discharged without a minute's notice previously. If his manner at that time showed some irritation, and if he impulsively declined to accept anything less than the full amount due him without deductions, it seems to us that he might be pardoned when we consider that he was being reduced to the ranks of the unemployed at a time when the obtaining

732

of employment was almost impossible. And, as suggested by counsel for plaintiff, if he felt an impulse to refuse to pay for oil, gasoline, etc., which he had bought at a time when he had employment, it might well be that he would reflect to himself that he could have done without gasoline and oil, had he been given a few weeks' previous notice that he was to be discharged. And again, we cannot overlook the fact that after the plaintiff had been discharged, and was without employment, the defendant's agents withheld from him the checks which represented the amount due him.

"To us it seems that all of the equities of the case, as well as the letter of the law, are with the plaintiff. Accordingly, there will be judgment for plaintiff, as prayed for.

"Robert Roberts, District Judge."

The judgment appealed from is affirmed.