Plaintiff instituted this suit for wages alleging that beginning July 2, 1940, he worked continuously for defendant through October 12, 1940. He was employed by defendant, the owner and operator of a sawmill, as a fireman in said mill.
Plaintiff alleged that during that period of time he worked 834 hours at an agreed price of thirty cents per hour, making his total earnings $250.20; that defendant paid him through that time and since the sum of $100.25, leaving a balance due of $149.95. He alleged that he had made demand on defendant for payment at its regular place of payment to its employees, in accordance with the provisions of Act No. 150 of 1920, as amended, and that he is entitled to all penalties as provided by said Act.
Plaintiff further alleged that under Act No. 145 of 1888, as amended, he has a lien and privilege upon the logs, square timber, lumber and all other manufactured materials of lumber in or about the sawmill and planing mill of defendant and that said privilege and lien covers both wages accrued as well as wages to accrue under said invoked penalties.
Plaintiff made the necessary sacramental allegations for a provisional seizure and prayed for the issuance of same.
Plaintiff also further alleged that Harvey Johnson was employed to perform labor for defendant in its sawmill plant at a wage of thirty cents per hour and that he worked for seventy-seven hours on September 24, *Page 203 
25, 26, 27, 30 and October 1st to 4th, inclusive, in the year 1940; and that for said labor the said Johnson was due by defendant $22.10. He alleged that Johnson had made demands for wages, as required by Act 138 of 1936, and that he is entitled to the penalties as provided by said Act; and that the said Johnson had the same kind of lien and privilege as he has against the logs, lumber, etc., at said mill. Plaintiff further alleged that Johnson had assigned his claim to petitioner and authorized him to institute this suit. The assignment is attached to the petition. Plaintiff further alleged that both he and Johnson are entitled to their regular wages of $18 per week from the time they ceased working for defendant until paid by it.
Plaintiff prayed for judgment in the sum of $149.95 balance due for accrued wages and for further judgment for $57 for penalties due for wages from October 12th to 31st, inclusive, and for $250, as attorney's fees. Plaintiff also prayed for judgment in the sum of $22 for his assignor's claim for accrued wages and penalties for wages due in the sum of $62.40, being for the time from October 5th to 31st, 1940, inclusive, and for reservation to claim hereafter any further accrued penalties due him; that the writ of provisional seizure be maintained and that his lien and privilege be recognized and the sheriff ordered to seize and sell the property upon which the lien rests and pay plaintiff out of the proceeds, in preference and priority, over anyone else.
Defendant filed a plea of vagueness to the petition. The lower court sustained the plea and ordered plaintiff to amend by itemizing the days and hours worked on each by plaintiff. Plaintiff then filed an amended petition complying with the court's order.
Defendant then filed exceptions of no cause and no right of action. These were not passed on below and are not urged here.
Defendant then answered admitting that plaintiff was employed by it. Every other allegation of the petition was denied, article by article.
On these issues the case was tried resulting in a judgment for defendant, rejecting the plaintiff's demands and he is prosecuting this appeal.
Plaintiff alleged in his petition that he had worked a total of 834 hours, however, the itemized statement he was ordered to furnish shows that he worked 880 hours. Defendant admits he worked 817 hours, however, defendant's books show a discrepancy against plaintiff in addition of ten hours in one week, if we accept defendant's admission, plus ten hours, we arrive at 827 hours which we do accept as the correct number of hours worked by plaintiff.
Plaintiff was employed at twenty cents per hour from July 2nd to September 23rd and from that date to August 12th, his pay was at the rate of thirty cents per hour. The discrepancy of ten hours we discovered was during the period plaintiff was receiving thirty cents per hour. He therefore earned $178.60 while in the employ of defendant. Plaintiff kept a record of all payments received by him and swears positively he received in orders for groceries, checks and cash during that period of time a total of $100.25. If this is correct, there was a balance due him at the time he ceased his work of $78.35. Plaintiff sets out the exact dates and the amounts received by him and states whether each was an order for groceries or money.
According to defendant's figures, if plaintiff did not receive any other payments than the ones he swears to, the amount owing to him would have been $75.35 and it is significant that although plaintiff is claiming a greater amount, he testified that on two different occasions different members of the defendant company told him he had $75 and some cents owing to him. Although they deny making the statement, it sounds to us like the truth. If plaintiff were lying, it is reasonable to assume he would have claimed that defendant admitted owing him the full amount he claimed and not the amount we find it actually was indebted unto him, less the $3 error in adding up his time.
Defendant conducted its business in a very loose manner and apparently had no regular pay days. The record discloses that defendant paid its employees principally by giving them orders for groceries on a merchant whose place of business was from ten to twelve miles distant from the sawmill and, in the case of plaintiff and many other employees who live near Counhwood, Louisiana, a distance of nearly twenty miles from their home. Numerous witnesses who had formerly worked for defendant testified in this case and the majority of them testified that defendant is still indebted unto them for part of their wages.
The record likewise discloses that plaintiff quit working for defendant because he could not get money from it to pay his *Page 204 
board and lodging. Defendant wished to give him an order for groceries and plaintiff wanted money. The record further discloses that defendant is not such a good paymaster as to be willing to advance even orders for groceries if it had not been indebted unto plaintiff.
Defendant in answer merely denied the allegations of plaintiff's petition. On trial it attempted to show that it had overpaid plaintiff by reading from its books, which were allowed to be filed in evidence by defendant over the objection of plaintiff. Defendant's books consist of a day book, time book and a ledger, or a copy from a ledger. They are most unsatisfactory; both pencil and pen being used to make the entries and the dates are either missing or uncertain. The day book does not contain all that is shown by the ledger.
Defendant took no receipts or acknowledgments for payments made and although some payments are claimed to have been made by checks, it has failed to produce the cancelled checks. The greater part of the payments claimed was orders for groceries to a merchant in Dubberly, Louisiana. Defendant claims to have paid the merchant for all these orders filled by him but has not produced these orders to prove they were issued. Plaintiff denies receiving many of them and certainly when defendant paid the merchant which received the orders, it certainly should have them in its possession. The members of defendant organization and its employees who testified admit they have no independent recollection of the payments to plaintiff claimed by it and all they know is what is reflected by the books of defendant corporation. These books were not admissible in behalf of defendant and certainly are not sufficient to overcome the direct and positive testimony of plaintiff and his witnesses. If this were true, a crooked employer could work members of the negro race and never pay them for their labor and be secure behind a crooked set of books.
Defendant had many ways it could have protected itself against paying twice, viz., by receipts, cancelled checks or the production of grocery orders and if it has failed to protect itself, it has no one to blame. Its reputation for not paying its labor, as disclosed by this record, would prevent us from accepting at face value the messed up set of books offered here, if they were admissible in evidence. We are convinced that defendant is indebted unto plaintiff in the sum of $78.35 for labor performed by him for the defendant as fireman at its mill.
There is no doubt in our minds about plaintiff making the demands on defendant for whatever was due him and that he made demand on October 12, 1940, at the office of defendant at its sawmill, which was the usual place to pay its employees. At that time plaintiff was not certain as to the amount due him but apparently was willing to accept the amount he contends defendant admitted owing him, to-wit, $75 and some cents. Defendant did not pay him anything and on the 19th, a week later, it gave him an order for $10 worth of groceries when he asked for his pay again.
We are satisfied that plaintiff has complied with the provisions of Act 138 of 1936 and is entitled to the penalties provided by that Act, viz., a continuance of his wages until he is tendered the amount due him at the time of his demand. He was working ten hours a day at thirty cents per hour, or $3 per day. He prayed for judgment for $57, covering nineteen days beginning October 13th and ending October 31st, 1940, and for reservation of his rights to sue for such penalties as they accrue in the future. His prayer should be granted.
Plaintiff's claim as assignor of the claim of Harvey Johnson was correctly denied by the lower court. Harvey Johnson, unfortunately, cannot read or write and had no record of any kind on which to base his testimony other than his memory, which proved on trial to be very defective. He did not know how much time he had worked or how much pay he had received. There is nothing in his case upon which we could found a judgment.
In this case plaintiff prayed for a provisional seizure to issue and that the sheriff seize the logs, square lumber, timber and manufactured materials in and about the sawmill under Act 145 of 1888, which Act has been amended and re-enacted by Act 52 of 1910 and the 1910 Act amended and re-enacted by Act 23 of 1912. The order for provisional seizure was signed by the District Judge but the record is barren of any evidence of its issuance. However, plaintiff is entitled to have his lien and privilege granted by Act 23 of 1912 recognized *Page 205 
and he is also entitled to a judgment for reasonable attorney's fees.
It therefore follows that the judgment of the lower court is reversed and there is now judgment for plaintiff against defendant on his main demand for the sum of $78.35, with legal interest from judicial demand until paid; and for the further amount of $57 as penalties under the provisions of Act 138 of 1936 and his rights to sue for such penalties as they accrue in the future are reserved to him.
It is further ordered and decreed that plaintiff have judgment against defendant in the sum of $75, as attorney's fees, which is hereby taxed as costs under the provisions of Act 138 of 1936.
It is further ordered, adjudged and decreed that plaintiff's lien and privilege on the logs, square lumber, all lumber and manufactured materials in the sawmill and planing mill of defendant is recognized enforceable and the Sheriff of Webster Parish, Louisiana, be directed to seize and sell the same in accordance with law and out of the proceeds to pay to plaintiff the amount of his claim in preference and priority over all others. Costs of both courts to be paid by defendant.