LOTTINGER, Judge.
Plaintiff, Joe A. Bielstein, instituted this suit against defendant, J. C. Hawkins, to recover wages, legal penalties and attorney fees under the provisions of Act No. ISO of 1920, as amended by Act No. 138 of 1936, Dart Statutes, Sections 4360 and 4361, L.S. A.-R.S. 23:631, 23:632. He claims wages in the amount of $101.68, plus penalties amounting to $89.60 per calendar- week from the 15th day -of March, 1949, until paid, as provided in said Acts, with legal interest from date of judicial demand, plus reasonable attorney fees, and costs.
Defendant answered and specifically denied that plaintiff had made demand for wages, as is required by said act, and alleges that plaintiff voluntarily agreed to wait until the regular pay day, on March 26, 1949, which was just a few days later than the date upon which he was discharged. Defendant further sets out that on and after the regular pay day, plaintiff’s wage check was in the possession of Mr. Grantham, defendant’s toolpusher, who was seeking plaintiff’s whereabouts in order to deliver the check; that said check was available at all times on and after the regular pay day and that at no time after March IS, 1949, did the plaintiff contact Mr. Grantham or Mr. Atkinson, the tool-pusher and driller, respectively, concerning the wages.
The lower court gave judgment as follows:
(a) For one hundred twelve and no/100 ($112.00) dollars, less social security and withholding tax deductions, being the *524 amount of accrued wages due plaintiff when discharged and which amount is presently deposited in the Registry of this Court;
(b) For five hundred thirty-seven and 60/100 dollars, less social security and withholding tax deductions, being the amount of penalty from March 16, 1949, until April 26, 1949, figured at $89.60 per week;
(c) For reasonable attorney fees, which are hereby fixed at one hundred and no/100 ($100.00) dollars, and
(d) For all costs of this suit.
Defendant brings a suspensive appeal.
The facts show that plaintiff was employed as a driller’s helper, commonly referred to as “roughneck”, by defendant on a rig then located in Beauregard Parish, Louisiana, tie had been so employed for a period of approximately six weeks prior to his discharge. He worked eight hours per day, seven days per week, for a total of fifty-six hours each week. His average weekly wages, including overtime, was $89.-60, less deductions for social security alnd withholding taxes. He had been paid twice before being discharged, once by the driller, Mr. Atkinson, who brought his wage check to plaintiff’s home in DeRidder, and once by Mr. Grantham, the tool pusher, who handed his wage check to him while at the rig. It appears that the defendant in this case had not established a local office in Beauregard Parish and that there was no established or customary place of payment of wages. The plaintiff worked on the • “tower shift”, from 4:00 P.M. to 12:00 Midnight, however, it was the practice for 'the relieving crew to take- charge one-half hour early, thus, for all practicable purposes, making said shift from 3:30 P.M., until 11:30 P.M. Plaintiff’-s immediate superior was Mr. Atkinson, the driller on that shift, and above the driller was Mr. Grantham, the tool pusher. The drilling rig was to be torn down on the morning of March 15, 1949, thus on the night of March 14, there was no work for the tower shift to do other than to 'gauge the tank every ■hour. Some of the crew was passing this idle time by playing poker. At some time between 11:45 P.M., and 1:00 A.M., on the night of March 14, 1949, Mr. Atkinson, the driller, directed Mr. Bielstein, the plaintiff, to go and gauge the tank. Plaintiff refused to do so, whereupon Mr. Atkinson told plaintiff, as they prepared to come in at the end of the tower shift, that he was fired.
The following morning plaintiff saw Mr. Grantham on the street in DeRidder and engaged him in a conversation regarding the incident of the preceding night and requested the wages which were due plaintiff. Plaintiff claims that he demanded his wages and Mr. Grantham told him to get a time order from the driller or wait until pay day. Mr. Grantham testified that, after plaintiff had requested his wages, Grantham told plaintiff that his work had been satisfactory and that if he would wait until the regular pay day he would try to get him a job on another rig, to which the plaintiff replied “O. K. Bill.”
Plaintiff claims that 'he expected his wage check to be mailed to him at his permanent address with which he had furnished the employer when first employed. He admits that he made no further effort to see or contact the toolpusher or driller with regard to his pay.
Mr. Grantham received the plaintiff’s pay check on March 26, 1949, along with the regular payroll. Mr. Grantham 'did not know where plaintiff lived and did not attempt to personally deliver the check, however, two or three days after receiving it, he gave it to -Mr. Atkinson who went to the home of plaintiff twice for the purpose of delivering the check. On each occasion the plaintiff was not in. Some time subsequent, the date not being fixed in the record, Mr. Atkinson was informed that the plaintiff was working in Eunice, Louisiana, and that he was employed as a roughneck by another drilling company. Mr. Atkinson made a special trip to Eunice, Louisiana, to locate the plaintiff and did locate him and he informed the plaintiff that Mr. Grantham, the toolpusher, had his check and that he was also living in Eunice, Louisiana, at the time. Mr. Atkinson also furnished plaintiff Mr. Grantham’s telephone number. It appears, nevertheless, *525 that the plaintiff did not contact Mr. Grant-ham to obtain his check. The record shows that on April 22, 1949, plaintiff’s attorney wrote Mr. Grantham demanding plaintiff’s wage check, plus the penalty as provided ■by law. Mr. Grantham forwarded said letter, together with the check of plaintiff, to the defendant’s home office in Houston, Texas. On April 25, 1950, the home office forwarded the pay check in the amount of $101.68 to plaintiff’s attorney. Plaintiff’s attorney returned said check because the defendant failed to include the penalty therein. On January 10, 1950, defendant's attorney made judicial tender of said check to the Clerk of Court of the Parish of Beauregard, said check being now in the custody of the said court.
The principal fact to be determined is whether plaintiff made demand upon plaintiff so as to recover the penalty, plus attorney fees, as is provided by law. The Statutes in question read as follows:
“it shall be the duty of every person, individual, firm or corporation employing laborers or other persons of any kind whatever when they have discharged any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether said employment is by the day, week or month, upon demand being made by the said discharged or resigned laborer or employee, upon his employer, at the place where said employee or laborer is usually paid. (Acts 1920, No. 150, Sec. 1; 1936, No. 138, Sec. 1).”
“Any individual, firm, person or corporation employing laborers or others in this State who shall fail or refuse to comply with the provisions of Section 1 of this Act, shall 'be liable to the said laborer or other employee for his full wages from the time of such demand for payment by the discharged or resigned laborer or employee, until the said person, firm, or corporation shall pay or tender payment of the amount due to such laborer or other employee. Provided further, that reasonable attorneys’ fees shall be allowed such laborer‘Or employee by the court in addition thereto and taxed as costs to be paid by such employer, in event a just suit be filed by such laborer or employee after twenty-four hours shall have elapsed from time of making such first demand following discharge or' resignation.” (Acts 1920, No. 150, Sec. 2; 1936, No. .138, Sec. 1) This act has been interpreted by our courts on several occasions. It appears that the object of this act is obviously to compel an employer to pay an employee within twenty-four hours after his discharge or resignation. The penalty feature of the act is nothing more than a coersive means to that end. The provisions of this act invoking a penalty must be strictly construed and it may yield to equitable defenses under our jurisprudence. Banhon v. Techeland Oil Corp., 205 La. 689, 17 So.2d 921; Binnion v. M. & D. Drugs, Iñc., La.App., 8 So.2d 307; Oller v. Bender, La.App., 146 So. 780; Whitehead v. E. J. Deas Co., Inc., 9 La.App. 47, 118 So. 856.
The record conclusively shows that the only two parties present when the alleged demand took place were plaintiff and Mr. Grantham. Plaintiff testified that he told Grantham that he wanted his money, whereupon Grantham replied that plaintiff would have to get a time order from the driller or wait until pay day for his check. Grant-ham, on the other hand, testified that, after plaintiff requested -his wages, he, Grantham, told plaintiff that he would try to get plaintiff a job on another rig if he would wait until the regular pay day, to which plaintiff replied, “O. K. Bill.” Defendant contends this additional conversation to be a withdrawal of plaintiff’s demand, and bases their defense mainly on the alleged withdrawal. It appears that nothing more was said at this conversation and that Mr. Grantham was left with the impression that the plaintiff would wait until the regular pay day for his check.
Mr. Grantham testified that, when an employee was discharged, it was customary for him to call the home office, notifying them of that fact and the amount of wages due. Mr. Oexman, the office manager of defendant’s home office, testified that, upon receiving such a notice from Mr. Grantham, *526 it was customary for him to mail the check immediately so that the discharged employee would receive the check within twenty-four hours. This was not done in this case because Mr. Grantham was of the impression that plaintiff had agreed to wait until the regular pay day for his check.
Defendant has cited several cases holding that the quoted statute must be strictly construed to recover penalties and that strong equitable defenses may be interposed to defeat recovery of the penalties. We thoroughly agree that that is the interpretation of the statute. We are inclined to believe that the conversation which took place between the plaintiff and Mr. Grant-ham left Mr. Grantham under the impression that the plaintiff would wait until the regular pay day for his check. We find that after the agents of the defendant had received the regular pay checks, that Mr. Atkinson went to the home of the plaintiff on two occasions to deliver him his check but failed to do so because the plaintiff could not be located. It further appears in this record that Mr. Atkinson made a special trip to Eunice, Louisiana, to locate the plaintiff, and to inform the plaintiff that his check was in the hands of Mr. Grantham in Eunice, and went so far as to furnish the plaintiff with the telephone number of Mr. Grantham. It further appears that the plaintiff made no attempt whatsoever to communicate with Mr. Grant-ham to obtain his check. It further appears in this record that the plaintiff made no attempt whatsoever to obtain his pay check from this defendant until the defendant received a letter from plaintiff’s attorney on April 22, 1949. We are of the opinion that the plaintiff was unreasonable in assuming or expecting his wage check to be mailed to him at his permanent address when no such payment for wages had ever been made or delivered to him' at such address. In view of the fact that this statute must be strictly construed and that it will yield to equitable defenses, we are inclined to believe that the defendant in this case has established an equitable defense and for that reason do not agree with the lower court in awarding the penalties and attorneys’ fees as granted.
Therefore for the above and foregoing reasons, the judgment of the lower court is amended by striking out the penalties and attorneys’ fees as therein provided and as amended is affirmed.
Judgment amended and affirmed.