316 So.2d 505 (1975)
Salvadore J. MILETELLO, III, Plaintiff-Appellant,
v.
NOBLE DRILLING CORPORATION, Defendant-Appellee.
No. 12647.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1975.
*507 Bruscato & Loomis, by Albert E. Loomis, III, Monroe, for plaintiff-appellant.
Madison, Files, Garrett, Brandon & Hamaker, by Charles L. Hamaker, Monroe, for defendant-appellee.
Before PRICE, HALL and MORRIS, JJ.
MORRIS, Judge.
This is a suit brought by plaintiff to recover from defendant wages due him for one day's work in the gross amount of $27.60 or net wages of $25.99. Invoking the provisions of LSA-R.S. 23:631 and 632, plaintiff also seeks to recover penalties and attorneys' fees. These statutes provide as follows:
LSA-R.S. 23:631
"It shall be the duty of every person, employing laborers or other employees of any kind whatever when discharging any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether the employment is by the day, week or month, upon demand being made upon the employer by the discharged or resigned laborer or employee at the place where the employee or laborer is usually paid."
LSA-R.S. 23:632
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety day's wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation. As amended Acts 1964, No. 422 § 1."
Defendant admits owing the wages sued for, but resists the claim for penalties and attorneys' fees. This suit was filed October 11, 1973, and after a trial on the merits judgment was rendered in favor of plaintiff for the amount of wages owed, but denying penalties and attorneys' fees. Plaintiff appeals from that portion denying penalties and attorneys' fees.
Defendant, Noble Drilling Corporation, is engaged in the business of drilling wells in search of oil and gas, and operates eight drilling rigs in an interstate operation which has its main office and payroll department in Tulsa, Oklahoma. It employs between 130 and 140 persons, and uses short-term local employees on the various rigs which it operates. On August 8, 1973, and prior thereto defendant was operating a drilling rig on a location in Ouachita Parish, Louisiana, designated as Olinkraft Well No. 2. On August 7, 1973, plaintiff appeared at the drilling site seeking employment. He had been working for another company on a drilling rig about one mile away, and when this job was completed he came to the site of Olinkraft Well No. 2 seeking employment. Plaintiff first talked to T. D. Nye, the tool pusher, and then to Charles H. Gryder, the driller. The defendant was short of help on this rig at the time, and agreed to put plaintiff *508 to work. It is not clear whether he was formally employed that afternoon or not, but he was instructed to report for work the next morning, August 8th. No record of his address was taken either day and no forms filled out which would give this information. A W-4 form, which at the time of employment is supposed to be filled out by an employee, giving his address and the number of tax exemptions which he claims, was not, in fact, filled out by this employee on August 7th or 8th. Plaintiff worked the day of August 8th and at the completion of his tour signed the daily payroll report, which provided space for the employees' social security number and number of hours work, but not the address. Plaintiff decided that the work was too dangerous for the wages he was earning and without notice to his employer quit following this one day's work.
Under company procedure, payrolls are made up and checks issued in the Tulsa office from the daily payroll reports sent in by each drilling rig. The payroll checks are mailed back to the drilling rigs with a payroll verification sheet or record prepared by the Tulsa office. The employees' checks and the payroll verification record are kept in the tool house and each employee is supposed to come by, receive his check from the driller or the tool pusher, sign the payroll verification record and write his social security number and address on the line provided for that purpose. According to the evidence, since plaintiff had not filled out a W-4 form or signed the payroll verification record, defendant had no record of plaintiff's address when he failed to return to work.
Plaintiff testified that he went to the drilling site three times to inquire about his wages for the one day that he worked the first time on or about August 10, the second time the following week and the third time about one week thereafter. He further testified that on the first two occasions he was told to check back later, and on the third occasion he gave his name, address, telephone number and social security number to Mr. Nye. About a month and a half later he went out to the rig, found out it had moved from the drilling site and tried to locate the company by telephone. This plaintiff also testified that he went by the State Office Building to find out where defendant was located, where its home office was, and who they were drilling for in Ouachita Parish. He further stated that he was told that they were drilling for a gas company in Arkansas, and upon calling this company, was told to call the Shreveport office of defendant. It does not appear that he called the Shreveport office until after this suit was filed, as on the advice of counsel he had then decided to file this suit.
Defendant's version of the demands by plaintiff is slightly different and consists of only two visits to the drilling rig. Mr. Nye recalled that the first visit to the drilling rig by plaintiff to demand his wages was about one week after his employment of August 8. He stated that plaintiff was told that the checks would be in the following Friday or Saturday, and plaintiff agreed to come back on Sunday to pick up his check. However, plaintiff did not return on Sunday. Although according to company policy the payroll verification sheet and any undelivered checks are required to be returned to the Shreveport office on Tuesday, this witness testified that he held the check until Thursday when he mailed it and the verification record back to the Shreveport office. He stated that immediately after mailing the check plaintiff visited the drilling rig the second time, and at this time he received the paper on which plaintiff had written his address, Plaintiff was advised the check would be mailed to him, as checks are not mailed from the drilling rig. This witness had no independent recollection of whether or not he supplied the Shreveport office with this address. Mr. Richard Guy Fugler, division manager of the Shreveport office, had no independent recollection of receiving plaintiff's name and address from Mr. Nye and *509 no specific memory of transmitting this information to the home office in Tulsa. He testified that under normal procedure his secretary would receive the payroll verification sheet and any undelivered checks, and Mrs. Greta McMichael, secretary in the Shreveport office, testified that she checks each payroll verification sheet to see that all checks have been delivered. This is confirmed by each employee's signature. If there are undelivered checks she would sometimes hold them for a couple of days waiting for a mailing address. Otherwise, she testified, the verification sheet would be mailed to Tulsa the day it was received. She vaguely remembers Mr. Fugler stating that he had given plaintiff's name and address to the Tulsa office. The Tulsa office has no record of receiving plaintiff's name and address and the check due plaintiff was held by the Tulsa office until the filing of this lawsuit. No further effort was made by the Tulsa office, the Shreveport office or any of the employees on the drilling rig to effect delivery of the check to plaintiff. Neither was any further demand or effort made by plaintiff to obtain delivery of the check.
The payroll verification record with which plaintiff's check was forwarded by the Tulsa office to the drilling rig spells plaintiff's name "S. J. Miliblle" as does the check filed in evidence. This verification sheet which Mrs. McMichael returned to the Tulsa office with plaintiff's check carries a notation that it was "mailed to Tulsa 8-29-73." An inspection of the plaintiff's signature on the daily payroll report will show how this misspelling could occur with one unfamiliar with the name and plaintiff's handwriting. Other materials in defendant's officethe W-2 Wage and Tax Statement and the individual employment ledgeralso have this error. Neither instrument lists plaintiff's address.
The predecessor of LSA-R.S. 23:631 and 632 was Act 150 of 1920. In an early case interpreting that act, Deardorf v. Hunter, 160 La. 213, 106 So. 831 (1926), the court, held without citation of authorities, that because of equitable considerations penalties would not be imposed. In Whitehead v. E. J. Deas Company, Inc., 9 La.App. 47, 118 So. 856 (1928), the court, citing Deardorf v. Hunter, supra, stated with reference to this act:
"The statute must be strictly construed as to the right to recover penalties, against which equitable defenses may be interposed . . . ." 118 So. at p. 857.
This, or similar language, has been used by the court in numerous cases ever since approving equitable defenses growing out of a variety of facts. See Williamson v. National Benefit Life Insurance Company, 16 La.App. 451, 133 So. 515 (1931); Hazel v. Robinson & Young, 187 La. 51, 174 So. 104 (1937); Elliott v. General Gas Corporation, 229 La. 128, 85 So.2d 55 (1955); Mitchell v. First National Life Insurance Company of La., 236 La. 696, 109 So.2d 61 (1959).
In most cases the equitable defense involves a dispute over the amount of wages that are due the employee. However, it is clear that the courts examine the facts to determine whether such dispute is bona fide or asserted merely to avoid penalties. See Jones v. LeBlanc, 263 So.2d 119 (La. App. 1st Cir. 1972) and Howk v. Sulphur Motor Company, Inc., 155 So.2d 272 (La. App. 3rd Cir. 1963). In cases involving facts other than a dispute over the amount of wages owed, the courts have also examined the evidence to determine if any justification for nonpayment exists. See Bridges v. McClenaghan, 14 So.2d 652 (La.App. 2d Cir. 1943) and Mitchell v. First National Life Insurance Company of La., supra. In many cases "equitable defense" is expressed in terms of good faith of the employer or arbitrary behavior, the former calling for a denial of penalties under the statute and the latter imposing same. Compare Jarrett v. Climatrol Corporation, 185 So.2d 63 (La.App. 4th Cir. 1966) [penalties assessed against employer who acted arbitrarily and capriciously]; *510 Clement v. Levenson, 236 So.2d 316 (La. App. 4th Cir. 1970) [employer who did not act arbitrarily, not assessed with penalties]; Martin v. Burns, 267 So.2d 913 (La.App. 1st Cir. 1972) [employer acting in good faith and not arbitrarily, penalties not imposed].
In Becker v. Choate, 204 So.2d 680 (La.App. 3rd Cir. 1967Writ refused 1968) the treatment given to equitable considerations by an examination of the particular facts of each case, was summed up in a succinct definition of "equitable defenses" as follows:
"While cases on this point generally state that R.S. 23:632 is subject to "equitable defenses", we are of the opinion that the word "defenses" does not mean a "defense" in the strict sense of the word. Rather, the tenor of these cases seems to indicate that the court will refuse to assess penalties and attorneys' fees where the facts of the particular case strongly indicate that greater justice will be attained by such refusal. These facts then become equitable considerations, or "defenses" in a loose sense of the word, which will move the court to deny the penalties." 204 So.2d at p. 683.

This definition and the examination of the facts of each case for any equitable justification has previously been adopted by this court and is here reaffirmed.
There is no dispute in the present matter over the wages owed, and only slight variations on the facts presented by the parties. This is primarily a breakdown in communications within the defendant corporation, and a failure of plaintiff to take positive action to secure his wages after failing to obtain his check at the wellsite. A simple letter or telephone call to the division office in Shreveport or the home office in Tulsa would, no doubt, have immediately secured plaintiff his check and he had been advised to do just that. However, the plaintiff's failure in this regard does not excuse defendant for its lack of diligence and lack of policy to effect delivery of wage checks to all its employees. The resolution of this matter must depend, as expressed in Becker v. Choate, supra, on whether the examination of the particular facts of this case indicate that greater justice will be attained by a refusal of penalties.
In Deardorf v. Hunter, supra, one of the earliest cases on the subject of employer penalties, the court refused to apply penalties where laches were attributable to the defendant's manager, although there was no dispute on the amount owed. In Oller v. Bender, 146 So. 780 (La.App. 2d Cir. 1933), there was no dispute over wages, but there was a suspicious order for payment. A delay for investigation was asked, plaintiff left no instructions for forwarding his wages and there was no demand prior to suit except from the attorney engaged by the employee who demanded penalties. The court held that the facts constituted an equitable defense and denied penalties.
Penalties and attorneys' fees were denied in Bielstein v. Hawkins, 50 So.2d 523 (La. App. 1st Cir. 1951), in a case involving the payment of a laborer on a drilling rig, which is very similar to the present matter. Plaintiff was discharged on March 14th, and orally requested his wages from the tool pusher the next day. Plaintiff testified he expected his check to be mailed to him at his permanent address with which he had furnished his employer when first employed. The tool pusher received plaintiff's check on March 26th, along with the regular payroll. He did not know where plaintiff lived and did not attempt to deliver it. Two or three days later, he gave it to the driller who went to plaintiff's home twice for the purpose of delivering the check. On each occasion the plaintiff was not in. Later the driller learned that plaintiff was working in Eunice, went there, found him, and told him the tool pusher had his check, giving him the tool pusher's telephone number. Plaintiff did *511 not contact the tool pusher, the check was not mailed to plaintiff, and on April 22nd plaintiff's attorney made demand for wages and penalties. The court under these circumstances held that defendant had established an equitable defense. Although defendant went to greater lengths to make delivery of the check than defendant in the present matter, it should be noted that the employer there had a permanent address for the plaintiff from the time he was first employed.
Elliott v. General Gas Corporation, supra, is also a case similar to the present matter. On January 14, plaintiff carpenter was discharged by his employer. On Friday, January 16, he called at the local office in Shreveport for his wages. The office manager advised that the check had not yet come in from Baton Rouge where the payroll was made up. On Saturday, the local manager phoned plaintiff that the check was in, and on Monday, January 19, the plaintiff picked up his check at the local office. He discovered that it was not for the right amount as it did not include some overtime due him, and brought the check back. No further effort was made by the plaintiff to obtain payment and suit was filed February 15. The evidence showed that defendant had found in its record the overtime which plaintiff claimed and had left instructions that he was to be paid. On March 21, after the suit had been filed, a tender of payment was made to the attorney employed by plaintiff and it was refused. Under these circumstances the court held that an equitable defense existed, even though the employer had done nothing further to correct the error after it found the overtime due plaintiff.
In Mitchell v. First National Life Insurance Company of La., supra, an equitable defense was available to defendant although $20 had been erroneously deducted from plaintiff's wages. There was apparently no dispute over the amount of wages owed in Mitchel v. Fein, 281 So.2d 463 (La.App. 4th Cir. 1973), but equitable considerations were applied to deny penalties and attorneys' fees where the employee who was sent by the one from whom he usually received his check to the controller, who advised him to see the defendant employer who had the check.
In the cases which have awarded penalties where there was no dispute over the amount owed, there were no circumstances which would excuse or justify a failure to effect delivery of wages. In Godfrey v. Louisiana Oil Refining Corporation, 163 So. 729 (La.App. 2d Cir. 1935), the court examined all the facts and, commenting upon the lack of employment opportunities at that time, held that the employer was callous and careless and that no equities existed. In Britton v. Holloman Lumber Co., 7 So.2d 202 (La.App. 2d Cir. 1942), the employer paid his employees in grocery orders and refused the payment of money. Under these circumstances the court found no equities and awarded penalties. After examining all of the facts in Geer v. Nelson Dodge, Inc., 282 So.2d 794 (La.App. 3rd Cir. 1973), the court concluded that they did not reveal ". . . any elements or instances which would be of a mitigating nature . . .". There was no dispute of any kind and no reasonable justification for nonpayment of wages in accordance with the statute.
The present matter is not a case of outright refusal to pay, nor can it be said that defendant "failed" to pay in the ordinary sense of that word. It is also questionable whether plaintiff effectively or validly "resigned" as contemplated by LSA-R.S. 23:631. See Becker v. Choate, supra. There was no bad faith or arbitrary action on the part of defendantonly a failure to effect delivery of the check which had been issued and sent to the drilling rig in the normal course of business by the Tulsa payroll office without any notice of plaintiff's "resignation". There was no calculated effort to deprive plaintiff of the wages due him, and no unworthy motive in defendant's lack of diligence. Under such circumstances, negligence *512 and lack of diligence in making delivery of wages have not been sufficient to deny to the employer equitable considerations. Oller v. Bender, supra; Bielstein v. Hawkins, supra; Elliott v. General Gas Corporation, supra.
Hendrix v. Delta Air Lines, Inc., 234 So.2d 93 (La.App. 4th Cir. 1970Writ refused 1970) and Young v. White Stores, Inc., 269 So.2d 266 (La.App. 3rd Cir. 1972), which held that company payroll policy was not an equitable defense and that such policy could not supercede the positive statute, are distinguishable from the present matter. In those cases the employees were discharged and there was a positive company payroll policy which did not permit payment of wages to terminated employees in accordance with the subject statute within 24 hours. There was no such showing of unalterable company policy in the present matter. By quitting in the manner in which he did without notice to anyone, even his immediate supervisors, without leaving a mailing address or instructions for payment of his wages, plaintiff is not in the same position as the discharged employees in those cases who immediately demanded their wages upon being discharged. Moreover, the plaintiff in the present matter, in effect, consented to wait until the regular company payroll was received at the well site, and then consented that his check be mailed to him. A follow up by him might have corrected the errors and omissions of payroll personnel responsible for the failure to make delivery.
A careful analysis of all of the facts leads us to the conclusion that greater justice will be attained in refusing penalties. The evil which the subject statute intended to suppress does not exist in this case, and we do not find manifest error on the part of the trial judge in his finding of equitable justification.
The award of attorneys' fees under LSA-R.S. 23:632 is another matter, as we held in Porter v. Lombardino, 303 So.2d 493 (La.App. 2d Cir. 1974Writ refused 1975) and Scallan v. Mark Petroleum Corp., 303 So.2d 498 (La.App. 2d Cir. 1974Writ refused 1975), the amendment of the statute in 1964 requires the award of attorneys' fees in the event a "well-founded suit for any unpaid wages whatsoever" is filed. There is no doubt the suit was "well-founded" as there was no denial of the wages owned. While we may feel the amendment odious inasmuch as it imposes the penalty of attorneys' fees on employers, regardless of their good faith and the existence of a bona fide dispute or other equitable considerations, this is a matter which addresses itself to the Legislature. We know of no other statute that imposes such a harsh penalty, without regard to good faith, arbitrariness, mistake or capriciousness of the offender, but this is a matter with which we can not be concerned. LSA-C.C. Article 20. Furthermore, the amendment encourages unnecessary litigation as it makes the payment of attorneys' fees absolute.
Counsel for plaintiff has presented a well prepared and researched case, and as the court did in Tuberville v. Foster, 113 So.2d 805 (La.App. 1st Cir. 1959), we commend him. However, the statute under which suit is brought provides for reasonable attorneys' fees which should bear some relation to the amount of wages involved. In Tuberville v. Foster, supra, in which wages of $102 where involved, penalties were denied, and in spite of the preparation and research of counsel, reasonable attorneys' fees were fixed at $75. In Porter v. Lombardino, supra, wherein counsel for plaintiff also demonstrated commendable preparation and research, an attorneys' fee of $100 was awarded where wages of $9.17 were involved. In Scallan v. Mark Petroleum Corporation, supra, wages of $1,150 were recovered and an attorneys' fee of $500 was assessed. It would thus appear that what is "reasonable" relates to the amount of wages involved. Compare these cases with Geer v. Nelson Dodge, Inc., supra, which awarded *513 $3,600 in penalty wages and $1,000 attorneys' fee. Under the circumstances we feel that an attorneys' fee of $350 would be proper in the present matter.
For the reasons assigned, the judgment of the district court is affirmed insofar as it awards gross wages in the sum of $27.60, subject to withholding and FICA taxes, and amended to award attorneys' fees in the sum of $350, all costs to be taxed to defendant-appellee.
HALL, J., concurs with written reasons.
HALL, Judge (concurring).
I agree with the majority holding that the employer was in good faith, presented an equitable defense, and is not subject to penalties under the statute. For the reasons set forth in my dissent in Scallan v. Mark Petroleum Corporation, 303 So.2d 498, 502 (La.App. 2d Cir. 1974), writ refused 307 So.2d 370, I disagree with the holding that the employer must pay attorney's fees. Nevertheless, I concur in the decree because the majority in three separate panels of this court have now ruled contrary to my views.