Jack P. F. Gremillion, Atty. Gen., Kenneth C. Banfield, Jr., Sp. Counsel to Atty. Gen., for defendants-appellants.

Breazeale, Sachse, Wilson & Hebert, Baton Rouge, for plaintiff-appellee.

HAMLIN, Justice.

For the reasons assigned in the case of Gulf, Mobile & Ohio Railroad Co. v. Louisiana Public Service Commission, 236 La. 687, 109 So.2d 58, the appeal herein is dismissed.

109 So.2d 61

**Henry MITCHELL**

**v.**

**FIRST NATIONAL LIFE INSURANCE COMPANY OF LOUISIANA.**

No. 43690.

Feb. 16, 1959.

Louis Lyons, Bossier City, for plaintiff-appellant.

Normann & Normann, New Orleans, for defendant-appellee.

McCALEB, Justice.

Henry Mitchell, as head and master of the community existing between himself and his wife, brought this suit to recover unpaid wages, allegedly earned by the latter while in the employ of defendant insurance company, together with penalties in the form of continuing wages and attorney fees provided by R.S. 23:631–632.

On the issues joined by defendant's denial of liability and plea of compensation or set-off, there was judgment in plaintiff's favor for $29.95, the net weekly wage claimed in the petition, with 5% interest thereon from January 4, 1955, until paid, but his demand for penalties and attorney's fees was rejected. Plaintiff has appealed, insisting that he is entitled to the statutory penalties, and defendant has answered

praying that the judgment be reduced to $9.95 and, alternatively, that interest on the amount awarded should run from February 21, 1957, instead of January 4, 1955.

The salient facts of the case are not in serious conflict and we find them to be as follows: Mrs. Mitchell was employed by defendant as a clerical worker in its Shreveport office from July 20, 1953, until October 2, 1954, and, at the time she discontinued her employment, she was receiving a weekly gross salary of $37.50, which, after deduction of social security payments, etc., left take-home pay of $29.95. The office in which she worked was managed by a Mr. Zatzkis, who had been in the employ of the company some nine years. Mrs. Mitchell's principal duties were typing, dictation and filing and she was also in charge of a petty cash box. The only other employee of the office was Mrs. Virginia Baird, who was the cashier, being in charge of a cash box to which only she and Mr. Zatzkis had keys.

During the week extending from September 4th through September 11, 1954, Mrs. Baird was absent from the office and Mrs. Mitchell took over her duties which consisted of making certain reports, receiving funds, depositing them in the cash box, disbursing monies whenever necessary and recording these transactions in a cash journal. Mrs. Mitchell was given Mrs. Baird's key to the cash box which was placed in her custody during Mrs. Baird's absence. During the week in question Mr. Zatzkis assisted her in the completion of the required reports but all entries in the journal, save one, were posted by Mrs. Mitchell. The one exception was an entry made by Mr. Zatzkis for receipt of a check from defendant's home office.

Sometime during the day of September 9, 1954, Mrs. Mitchell informed Mr. Zatzkis that she was $20 short in her accounts. On that day all of the entries in the cash journal had been made by Mrs. Mitchell. Nothing was done about the shortage at that time but, upon Mrs. Baird's return, she checked all the entries in the cash journal at the suggestion of Mrs. Mitchell and confirmed the $20 shortage.

Subsequently, upon instructions from the president of the company, Mrs. Mitchell was informed by Mr. Zatzkis that the company expected her to restore the shortage or she would have to resign. Mrs. Mitchell then told Mr. Zatzkis that she did not feel that she should be held responsible for the loss and that, under the circumstances, she preferred to resign. Her employment was accordingly terminated on October 2, 1954.

On October 6, 1954, defendant made a tender of $9.95 as the amount due Mrs. Mitchell. This was the balance of the $37.50 weekly wage after deducting withholding and social security taxes and the $20 as compensation for the shortage. The tender was immediately refused by Mrs. Mitchell

and, on December 21, 1954, she made an additional demand for her full wages. Upon defendant's refusal to accede, she instituted suit on January 4, 1955, in the Caddo Parish District Court for her wages plus penalties and attorney's fees provided by R.S. 23:631–632 and, after a trial on the merits, she was granted judgment for $29.95, her demand for the penalties and attorney's fees being denied. Upon appeal here, this Court, on December 10, 1956, sustained an exception of no right of action interposed by defendant and dismissed her claim on the ground that she, being a married woman, could not sue for recovery of a community asset. See Mitchell v. First National Life Insurance Company, 231 La. 546, 91 So.2d 788.

In due course, plaintiff's husband instituted the present demand in the Civil District Court for the Parish of Orleans where, as aforesaid, the same result has been reached on the merits as that of the court in Caddo Parish.

In his plea for the assessment of penalties and attorney's fees, counsel for plaintiff argues that, since Mr. Zatzkis had access to the cash box kept in the Shreveport office, there was no legal ground for the insistence by defendant that Mrs. Mitchell was responsible for any cash shortage which might occur and that, therefore, its action in deducting the amount of the shortage from her weekly pay check can only be regarded as arbitrary and oppressive.

We do not find counsel's position tenable. It is, of course, true that, since Mr. Zatzkis had a key to the cash box in which the daily receipts were kept by plaintiff's wife, defendant's plea of compensation or set-off is not well founded for, while it is fundamental that an agent or a fiduciary is bound to restore everything that he has received for the account of his principal (see Articles 3004 and 3005 of the Civil Code; Foreman v. Pelican Stores, La.App., 21 So.2d 64 and the many authorities there cited), this doctrine cannot obtain, in the absence of specific agreement, where another person is given access to the company's funds or property in the charge of the agent. But the fact that defendant did not have the legal right to withhold the $20 from Mrs. Mitchell's salary does not justify the infliction of penalties upon it, if its action was not motivated in bad faith or founded on an unreasonable or arbitrary stand.

It has been many times said that the penalty statute invoked by plaintiff should be strictly construed and that its provisions yield to equitable defenses. Deardorf v. Hunter, 160 La. 213, 106 So. 831; Hazel v. Robinson & Young, 187 La. 51, 174 So. 105; Bannon v. Techeland Oil Corp., 205 La. 689, 17 So.2d 921; Elliott v. General Gas Corp., 229 La. 128, 85 So.2d

55 and Clevy v. O'Meara, 236 La. 640, 108 So.2d 538.

■ In the case at bar, the evidence sustains the good faith of defendant company. Although no explicit instructions were given to Mrs. Mitchell that the company would hold her responsible for cash shortages in her accounts, it had long been the custom of the office to require the person in charge of the funds to bear the loss. That this was generally assumed and understood by the employees is avouched by Mr. Zatzkis and Mrs. Baird and a former employee, placed on the witness stand by plaintiff, stated that, even after she left the employ of defendant, it endeavored to have her restore a shortage of some $60 which had been discovered in her accounts.

When Mrs. Mitchell took the position that she would resign rather than assume the $20 loss, Mr. Zatzkis did not act hastily or without authority. Rather, he brought the matter to the attention of the president of the company who directed the deduction of the $20 from her wages, stating that, while the company managers, assistant managers, cashiers and clerical force were bonded up to $2500 each, the bonding company expected defendant to collect the amount due from the employee in charge.

It is evident that defendant had complete faith in Mr. Zatzkis and did not give consideration to the fact that his free access to its funds precluded it from legally enforcing claims for reimbursement from other employees. But its error in this respect does not deprive it of its defense of good faith insofar as the infliction of penalties is concerned. Two district judges have already deemed the defense well taken and, after a careful examination of the record, we are unable to say that they were in error.

■ We find no merit in the plea of defendant that the judge erred in allowing interest to plaintiff from January 4, 1955, the day on which the suit was erroneously instituted by Mrs. Mitchell, rather than from February 21, 1957, the date upon which plaintiff made demand as head of the community. Indeed, interest was prayed for from September 27, 1954 and, under Article 554 of the Code of Practice, it should have been allowed from the date on which the debt became due, October 2, 1954. The judgment will be amended accordingly.

For the foregoing reasons, the judgment appealed from is amended by awarding plaintiff 5% per annum interest on the judgment in his favor from October 2, 1954 until paid and, as thus amended, the judgment is affirmed.