204 So.2d 680 (1967)
Robert BECKER, Plaintiff-Appellant,
v.
Avery O. CHOATE, d/b/a Choate Towing Service, Defendant-Appellee.
No. 2096.
Court of Appeal of Louisiana, Third Circuit.
November 29, 1967.
Rehearing Denied December 28, 1967.
Writ Refused February 2, 1968.
*682 Maurice T. Mouton, Abbeville, for plaintiff-appellant.
LeBlanc & Boudreau, by Albert Boudreau, Jr., Abbeville, for defendant-appellee.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a companion case with Hollis Becker v. Avery O. Choate, No. 2097, 204 So.2d 686 (La.App.3rd Cir., 1967), which cases were consolidated for trial purposes. Since the issues are identical in both of these cases, we shall consider them as one for the purposes of this appeal.
These two actions were brought by plaintiffs in forma pauperis to recover from the defendant, Avery Choate, sums allegedly due them in back wages for May 1 and 2, 1965, and penalties, which sums total $1,687.50 for each plaintiff, plus interest and $562.75 in attorney's fees.
The defendant filed a reconventional demand against the plaintiffs in these two suits, charging them with wrongful abandonment of the boat and claiming damages therefrom totaling $10,101.30. The district judge rejected the claims of the plaintiffs and gave judgment in favor of the defendant as plaintiff in reconvention in the sum of $91.30. From these judgments the plaintiffs alone have appealed.
The plaintiffs, Robert and Hollis Becker, worked together on a rather small tugboat belonging to the defendant called the "Louis D". Hollis Becker was the mate of the tug and his older brother, Robert Becker, was the captain. The two brothers were each paid $18.75 per day and worked in shifts of ten days on and five days off. At this time the tug on which they were working was on 24-hour standbythat is, the tug was subject to being called out on a job at any time. On the evening of May 2, 1965, the tug was docked in port several hundred yards from defendant's office awaiting a call for her services. Sometime between 7:00 and 8:00 P.M., plaintiffs both left the boat and proceeded to a nearby tavern to get a snack. At the tavern plaintiffs imbibed a couple of beers and then they met Paul Baudoin, who generally worked as a deckhand for defendant but on that night was watching the defendant's office. His duties consisted primarily of answering the phone and taking messages for the defendant, who was out of town that evening. While plaintiffs and Mr. Baudoin were talking, the subject as to their respective wages apparently arose, and, the plaintiffs testified, upon their discovery that Mr. Baudoin was being paid more than they were, they told him they were "quitting" their job that night and for him to tell the defendant to get another crew to take care of the boat. About an hour later the plaintiffs went back to the boat and collected their belongings. Robert Becker testified that he phoned Mr. Baudoin around 9:00 or 9:30 P.M. and re-affirmed the position that they were quitting their job and leaving the boat immediately. Mr. Baudoin apparently did not believe the plaintiffs were serious or else he misunderstood them. He did, however, tell them that if they wished to call the boss he would give them the defendant's number and they could tell him that they were quitting. Plaintiffs, *683 however, did not want to call the defendant themselves; instead, they told Mr. Baudoin to convey the message. The message was not conveyed and the defendant had no actual knowledge of the plaintiffs' quitting their job until the next morning, when he reached the office and discovered they had left the boat. He then went to the tug and discovered both bilge pumps missing. The cost of $91.30 in replacing the two bilge pumps was one item of damages sought from the plaintiffs by the defendant and recovered in his reconventional demand.
R.S. 23:631 provides that an employer must pay an employee who has been discharged or who resigns "within twenty-four hours after such discharge or resignation * * * upon demand being made on the employer by the discharged or resigned * * * employee at the place where the employee * * * is usually paid." And R.S. 23:632 provides penalties for the employer's failure to timely pay the wages due the employee. The penalties include up to three months' pay, plus attorney's fees.
Although an employer's delay in paying wages earned by employees within twenty-four hours after their discharge or resignation renders him liable for penalties under R.S. 23:632, this statute must be strictly construed, and it is well settled that the courts will refuse to allow penalties if the employer had some equitable justification for not paying the wages timely. Mitchell v. First Nat. Life Ins. Co. of La., 236 La. 696, 109 So.2d 61 (1959); Clevy v. O'Meara, 236 La. 640, 108 So.2d 538 (1959). See also, Strickland v. American Pitch Pine Export Co., 224 La. 949, 71 So.2d 338; Deardorf v. Hunter, 160 La. 213, 106 So. 831 (1926); Tuberville v. Foster, La.App. 1 Cir., (1959), 113 So.2d 805.
In such cases the court, in its sound discretion, may refuse to award the statutory penalties. For example, the employer in the Mitchell case, supra, acting in good faith, withheld from an employee's check the sum of $20.00 which represented the amount of shortage in a cash box to which this employee was among those having access. The court stated:
"But the fact that defendant did not have the legal right to withhold the $20 from Mrs. Mitchell's salary does not justify the infliction of penalties upon it, if its action was not motivated in bad faith or founded on an unreasonable or arbitrary stand."
Although defendant's legal defense was unsupportable, the court denied the imposition of penalties and attorneys' fees in view of equitable considerations.
The Clevy case, supra, is analogous to the instant case. There the employee notified their superior of their resignation after working part of one day. His pay check, however, did not include wages for that part of the last day on which he worked. The employer's failure in this regard was due to haphazard bookkeeping, the error having been committed by a supervisor. On this point the court said:
"* * * [B]ecause of the equitable considerations hereinafter discussed plaintiffs are not entitled to the penalties and attorneys' fees demanded.
"In the first place undoubtedly the defendant acted in good faith in refusing to pay plaintiffs any wages for February 29."
In this case the employer had no real defense at all, yet the Supreme Court, considering all the circumstances, affirmed the trial court's judgment in disallowing the penalties and attorneys' fees.
While cases on this point generally state that R.S. 23:632 is subject to "equitable defenses", we are of the opinion that the word "defenses" does not mean a "defense" in the strict sense of the word. Rather, the tenor of these cases seems to indicate that the court will refuse to assess penalties and attorneys' fees where the facts of the particular case strongly indicate that greater justice will be attained by such refusal. These facts then become equitable considerations, *684 or "defenses" in a loose sense of the word, which will move the court to deny the penalties.
We feel that in this case there are sufficient equitable considerations for us to affirm the trial court in rejecting the assessment of penalties. In the first place, the plaintiffs quit the boat abruptly and without any actual notice to any superior. Their action was contrary to the custom of their employment or trade, and it is doubtful that they effectively or validly "resigned" as contemplated by R.S. 23:631. Plaintiffs did not demand payment in the manner prescribed by § 631 until some months later. Defendant, having no actual notice of plaintiffs' "resignation", did not know how long plaintiffs worked on May 2, 1965. Defendant had believed that plaintiffs intended to forfeit their wages because of their unauthorized abandonment of the boat. Finally, defendant acquired a cause of action against plaintiffs from their sudden and irresponsible quitting the tug, leaving no one to care for it or guard its effects, which conduct resulted in the loss of two pumps.
Because of these equitable considerations, we feel the defendant should not be subjected to the payment of penalties or attorney's fees. But while equitable considerations may constitute a defense to the assessment of penalties and attorney's fees against the employer, such does not relieve the employer from liability for the actual amount of the wages due. See Clevy v. O'Meara, supra; Mitchell v. First National Life Ins. Co. of La., supra; Altom v. Mt. Vernon Oil & Gas Co., 174 La. 775, 141 So. 457 (1932).
Therefore, the defendant was not relieved from the obligation of paying the accrued wages of the two plaintiffs in the sum of $18.75 per day for May 1st and for whatever portion of May 2nd before they actually left their employment. While the evidence on this issue is vague and inexact, it appears clear that the plaintiffs did not quit their employment before 8:00 P.M. In addition, it appears that after they returned from the tavern, they remained aboard the tug until at least 9:00 o'clock. Although there is evidence indicating that they remained until nearly midnight, there is also evidence indicating that the plaintiffs themselves had considered their employment terminated while they were still at the tavern, which was sometime between 8:00 and 8:30. The record reveals that the regular "work day" was from 9:00 A.M. to 9:00 A.M. the next day. We are of the opinion that the plaintiffs left their employment around 9:00 P.M. on May 2. Therefore, they were entitled to their wages for all of May 1st and for half of May 2ndthat is, one and one-half days' work. Therefore, the wages due each of the plaintiffs amounts to $28.13.
We do not feel that R.S. 34:877 is applicable in this case. That section provides:
"Any person who ships upon a vessel to do service thereon either by the month or voyage * * * and abandons the boat before having fulfilled his engagements, * * * shall, besides forfeiting all claims to the wages due for the service, be liable to the owners of the vessel for any damages which they may sustain by the abandonment * * *."
As being penal in nature, this section must be strictly construed. Its invocation is a matter of defense (to this principal action), and therefore the burden of proving its application rests upon the defendant. (The defendant, himself, never invoked this statute before this appeal.) The preponderance of the evidence is not conclusive in showing that the plaintiffs unlawfully abandoned the boat, or that they were doing service on the tug "by the month or voyage." Further, we doubt that the plaintiffs could be deemed as being on a "voyage" within the meaning of the statute at the time they quit their job, since the tug was docked near the home office and was not actually engaged in any commercial operations.
*685 In regards to the reconventional demand of the defendant, the trial court found that he (plaintiff in reconvention) failed to prove any damages except $91.30, which represented the cost of two bilge pumps installed in the tug to replace others stolen therefrom after the plaintiffs quit the boat.
The trial judge found that it was the duty of the captain and mate not only to operate the tug while on a call, but also to remain at the boat in port and protect it and articles aboard it against danger of vandalism as well as against dangers from natural and elemental forces. Further, the policy of defendant and other boat owners and the custom of the trade required the crew of a boat to remain thereon until they were relieved from duty, even when they have resigned from their jobs.
We find no manifest error in the trial court's conclusion that the plaintiffs owed a duty to remain at the boat until relieved, even after having evidenced a design to quit, and that the loss of the two pumps was a foreseeable occurrence proximately caused by the plaintiffs' failure to guard the boat and its equipment until some reasonable time when they could be relieved of their duties.
The action of plaintiffs in leaving the tug without the consent or actual knowledge of the defendant before their work day was completed was an act creating a substantial risk that some harm might come to the tug or its equipment before the defendant had a reasonable opportunity to assign someone else to operate or guard the boat. As a result, the plaintiffs were guilty of negligence if not willful misconductwhich renders them responsible for the loss of the pumps.
As to the matter of proof of this claim, we find sufficient evidence in the record to show that two pumps were stolen from the tug sometime on the night of May 2nd and that the defendant replaced those missing pumps with two new ones at a cost of $91.30. We disagree, however, that $91.30 the cost of two new pumpswas the proper measure of damages for the loss of the original pumps aboard the tug. The damages allowed the plaintiff in reconvention should be limited to the actual value of the two original pumps on the tug. While there is no appraisal or estimation as to the actual value of the stolen pumps, the record reveals that they were not new ones, but were in good condition.
The mere failure or inability of one to prove his actual damages does not preclude him from receiving an award where it is shown that he is entitled to some damages. See Manuel v. Texas Gas Transmission Corp., 153 So.2d 157 (La.App. 3 Cir., 1963); American Employers Ins. Co. v. Schoenfield, 144 So.2d 595 (La.App. 4th Cir., 1962); Berryman v. International Paper Co., 139 So.2d 806 (La.App.3d Cir., 1962); Williams v. Langston, 138 So.2d 691 (La.App. 4th Cir., 1962). In such instances the court has the power to award whatever damages it deems reasonable under the circumstances. We, therefore, are of the opinion that Mr. Choate, plaintiff in reconvention, is entitled to an award against the plaintiffs in the sum of $65.00 for the loss of two pumps.
For the foregoing reasons the judgment of the trial court is reversed insofar as it rejected the demand of plaintiff Robert Becker for earned wages; and we are of the opinion that Robert Becker is entitled to recover the sum of Twenty-eight and 13/100 ($28.13) Dollars from the defendant, Avery Choate. The judgment of the trial court in favor of Avery Choate in reconvention is amended, and as amended, affirmed, to provide for an award against defendant in reconvention, Robert Becker, in the sum of Sixty-five and No/100 ($65.00) Dollars.
Having determined that Avery Choate is indebted to Robert Becker in the sum of $28.13 and that Robert Becker is indebted to Avery Choate in the sum of $65.00, by applying the principles of compensation set forth in La.Civil Code Articles 2207-2216 to these two adverse money judgments, we find a balance in favor of Avery Choate *686 and against Robert Becker in the sum of Thirty-six and 87/100 ($36.87) Dollars.
It is hereby ordered, adjudged and decreed that there be judgment in favor of plaintiff in reconvention, Avery Choate, against Robert Becker in the sum of Thirty-six and 87/100 ($36.87) Dollars plus five per cent (5%) interest from date of judicial demand.
Although there is another judgment in this latter amount in the companion case herewith, it is understood that plaintiff in reconvention, Avery Choate, is not entitled to any sum in excess of $36.87 from either or both Robert Becker and Hollis Becker. The costs in both courts are assessed as follows: one-half against Avery Choate, and one-half against Robert and Hollis Becker.
Reversed in part: amended and affirmed in part.

On Application for Rehearing.
En Banc. Rehearing denied.