320 So.2d 303 (1975)
RUBENSTEIN BROS.
v.
Michael A. LaFORTE, Jr.
No. 6919.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
*304 Stahl & Berke, Kenneth J. Berke, New Orleans, for Rubenstein Brothers, plaintiff-appellant; Max Nathan, Jr., of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, of counsel.
Ronald J. Rakosky, New Orleans, for Michael A. LaForte, Jr., defendant-appellee.
Before SAMUEL, REDMANN, LEMMON, GULOTTA, STOULIG, BOUTALL, SCHOTT, MORIAL and BEER, JJ.
BOUTALL, Judge.
Plaintiff, Rubenstein Bros., instituted suit against defendant, Michael A. LaForte, Jr., for recovery of the balance due on defendant's promissory note. Defendant answered and reconvened seeking recovery of unpaid wages, together with statutory *305 penalties and attorney's fees. Judgment was rendered in favor of Rubenstein Bros. on the promissory note after LaForte admitted the debt and correctness of the amount. This part of the judgment has not been appealed and is now final. On the reconventional demand, judgment was rendered in favor of LaForte, the amount being increased upon new trial had. Rubenstein Bros. has appealed the judgment on the reconventional demand.
Michael LaForte was a clothing salesman for Rubenstein Bros. in its Madison Shop. Basically he worked on a commission basis receiving 6% commission on all the goods he sold. The dispute arose over the commissions due on certain "special order" sales. In a "special order" sale, the customer would be measured and select certain fabrics and styles, this would then be written up in an order form and sent to a clothing manufacturer. When the custom made suits and apparel arrived at Rubenstein Bros. they would be delivered to the customer for his approval. Since the customer had the right to accept any part of the special order, or to reject the order entirely, such a sale is not complete until the buyer accepts the goods. It is only then that the commission on the sale becomes due upon only that part accepted. The crux of the dispute in this case is that LaForte had written up the special order, but had resigned his job with Rubenstein Bros. before the suits arrived for delivery, and the delivery of the suits and conclusion of the sale was handled by another employee. LaForte demands the full 6% commission on the goods sold (stipulated in the amount of $6,280.00) because the goods were actually accepted and purchased by the customer. In opposition to this Rubenstein Bros. contends that when a salesman resigns before the completion of the sale, no commission is due him, but nevertheless the commission was split, LaForte was paid 3% and the concluding salesman was paid 3%.
There is no written document between the parties setting out the terms of employment, and resort must be had to the testimony of the witnesses to determine if some oral agreement existed. Testimony was elicited from LaForte, David Rubenstein (a partner in the business), the manager of the Madison Shop and two salesmen. Although David Rubenstein testified that it was store policy not to pay any commission to a resigned salesman in cases of special order as this, the manager of the shop was of the opinion that such matters are handled on an arbitrary or equitable basis, depending upon the circumstances. The two salesmen testified variously on the policy, and LaForte denied the existence of the policy. With this contradictory and confusing testimony before him, the trial judge decided that Rubenstein's did not have such a policy and awarded LaForte the full 6%. Since Rubenstein's had already paid LaForte one half of the commission, or 3%, the trial judge awarded LaForte the sum of $188.40, representing the other 3%. In his reasons for judgment, the trial judge clearly has based his decision upon the credibility and the weight to be assigned to the testimony of the various witnesses. Although we do not agree with some of the findings of the trial judge, we may not simply substitute our opinion for his, but we must accept his findings unless they are manifestly erroneous. There is sufficient evidence in the record to support his findings and we cannot say there is manifest error present.
The next issue before us is the award of penalties and attorney's fees because of nonpayment of wages under the provisions of LSA-R.S. 23:631 and 632.[1] *306 Initially, Rubenstein Bros. contends to us that these laws are not applicable since LaForte was paid on a commission basis based on amount of sales and hence his employment was not by the day, week or month. The application of the statute is not governed by the type of salary or payment received by the employee but rather by the terms of the employment itself. In this case, the trial court found that the employment was by the week, because the employee had a weekly draw of $180.00 per week. In view of the fact that the days per week that such salesmen could work were regulated by the employer, we have no quarrel with this finding, although we note that the weekly draw was not a guaranteed salary, but was subject to adjustment and accounting one way or another based upon the amount of goods sold, goods returned, et cetera once each month. In any event, we find that LaForte does come within the provisions of the statute cited above.
However, we disagree with the conclusion that LaForte is entitled to the statutory penalties. As noted above, the dispute between the parties arises because LaForte made the initial contact in the special order sale, then resigned, and after the goods arrived another salesman, together with David Rubenstein, called upon the customer, fitted him into the merchandise and secured his acceptance of the merchandise. Despite not having done the work necessary to completion of the sale, LaForte contends he is entitled to the full 6% commission, to the exclusion of the other salesman. On this and other sales he claimed full commission on a sum in excess of $12,000 and filed reconventional demand for recovery of this amount. The employer, although initially taking the position that LaForte was entitled to no commission, after negotiations paid him one-half the commission on the sum of $6,280.00, and it is noted that this was the stipulated sum at trial date.
The record further discloses that these negotiations came about because at time of resignation, LaForte owed his employer both a balance due on an open account and on the promissory note sued upon. The parties had agreed that whatever was due LaForte would be applied to the debt. LaForte's claim was always that the commissions due him more than offset the indebtedness he owed the company, and it appeared that the negotiations between the company and LaForte were heavily influenced by LaForte's debt to his employer. We conclude that there was a good faith dispute between the parties as to the indebtedness and that this is not a case where an employer simply refuses to pay. In this case the employer actually paid the 6% commission due on the sale, having paid one half of it to LaForte and the other one half to the salesman who completed the sale, Barry Lipscomb. Our jurisprudence has uniformly held that the statute in question is a penal statute, that it should be strictly construed and that its provisions yield to equitable defenses. Mitchell v. First National Life Insurance Company of Louisiana, 236 La. 696, 109 So.2d 61 *307 (1959); Clevy v. O'Meara, 236 La. 640, 108 So.2d 538 (1959).
We hold that the above facts indicate a good faith dispute existed between the parties, and that the trial judge erred in awarding the maximum penalties for unpaid wages. Considering that Rubenstein Bros. was in no way enriched by this transaction since it paid out the entire 6% commission timely, we conclude that the employer should not have been assessed the penalties provided in the statute. Pittman v. Eyrand, 290 So.2d 800 (La.App. 4th Cir. 1974); Krison v. Texas Industries, 253 So.2d 614 (La.App. 2nd Cir.1971); Clevy v. O'Meara, supra.
Next we turn our attention to the matter of attorneys' fees. LSA-R.S. 23:632 allows reasonable attorneys' fees in the event the employee files a well-founded suit for any unpaid wages whatsoever. As noted above, we have affirmed the award of $188.40 in unpaid wages. The statute does not apparently require that the entire amount sued for be recoverable, but only that "any unpaid wages whatsoever" be recoverable. Additionally, as we interpret § 632, it does not require the claimant to be successful in obtaining the continuing wage penalty in order to receive reasonable attorneys' fees, but establishes a different basis for recovery of attorneys' fees.
Prior to 1964, it appears that the statute provided the same basis for recovery or denial of wage penalties and attorneys' fees, that is, dependent upon the existence of equitable defenses by the employer. See Clevy v. O'Meara, supra and Mitchell v. First National Life Insurance Company of Louisiana, supra. However § 632 was amended by Act 422 of 1964 to its present status, substituting for the words "just suit" the words "well-founded suit for any unpaid wages whatsoever". While just suit carries the connotation of good faith and equitable defenses, a well-founded suit simply means a suit in which recovery of wages is granted. Thus, in this case, where we affirm the award of back wages due, we must also grant reasonable attorneys' fees.
We recognize that in the case of Pittman v. Eyrand, supra, we granted back wages due and denied both continuing wage penalties and attorneys' fees. The change in basis established by the Act of 1964 was not argued to us or placed at issue, but only the amount or sufficiency of the award of attorneys' fees. (The trial court awarded only $1.00 attorneys' fees.) We have been referred to the cases of Porter v. Lombardino, 303 So.2d 493 (La. App. 2nd Cir. 1974) and Scallan v. Mark Petroleum Corporation, 303 So.2d 498 (La.App. 2nd Cir. 1974). We note in each case that the employee was granted back wages and because of his successful recovery of unpaid wages was granted attorneys' fees. We agree with the holdings in those cases permitting the recovery of attorneys' fees based simply upon the successful recovery of unpaid wages, and we reject our decision to the contrary in Pittman v. Eyrand, supra.
The trial judge initially awarded the sum of $350 as reasonable attorneys' fees based apparently upon the amount of work done, and then on new trial simply based attorneys' fees on a percentage of the amount recovered. Although the record does not disclose any evidence as to the value of the attorneys' fees, it is apparent from an examination of the record that the attorney for LaForte did considerable work in connection with this case. Accordingly, we simply adopt and award the amount of $350.00 as originally awarded by the trial judge, inasmuch as we cannot say that it is unreasonable and tax it as costs to be paid by the employer.
For the foregoing reasons, we affirm the judgment appealed from insofar as it makes an award in favor of plaintiff in reconvention, but we amend the judgment to reduce the amount recovered in accordance *308 with the views expressed herein to read as follows:
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff in reconvention, Michael A. LaForte, Jr., against defendant in reconvention, Rubenstein Bros., in the sum of $188.40, with legal interest from date of December 20, 1973, together with attorney's fees in the amount of $350.00, which are taxed as costs. Appellant shall pay all costs in both courts.
Amended and affirmed.
GULOTTA and BEER, JJ., concurring with reasons.
REDMANN and LEMMON, JJ., dissenting with reasons.
GULOTTA, Judge (concurring).
I concur. In retrospect, as the author of the Pittman v. Eyrand opinion, I feel we erred when we denied attorney's fees after we concluded plaintiff was entitled to past due wages. I agree with the result reached by the court en banc in the instant case.
BEER, Judge (concurring).
I feel that the majority is correct in its treatment of the issue involving the award of attorney's fees. Also, I agree that the majority is correct in its conclusion that the judgment of the trial court on the basic determination of liability is not so incorrect as to be manifestly in error. However, I am obliged to state that I do disagree with the trial court's basic determination of liability on the part of Rubenstein Brothers though I cannot say that it is manifestly erroneous.
REDMANN, Judge (dissenting).
This is such a questionable case that I, for one, would reverse the trial court's basic determination of liability for the claimed commission. Yet we say that the employer should have paid this questionable claim rather than question itand penalize the questioning of it by imposing attorney's fees twice the amount of the claim itself!
If Louisiana's courts are to be open, La.Const. 1 § 22, and no one is to be deprived of property except by due process of law, art. 1 § 2, nor to be subjected to forfeiture of property without the right of judicial review, art. 1 § 19: theneven ignoring federal constitutional guaranteesLouisiana's legislature may not close the courts to an employer and take his property without due process and right of judicial review, by a statute which obliges the employer to pay seriously disputed wages rather than contest them, under substantial penalty.
I therefore dissent from the majority interpretation of La.R.S. 23:632 and the overruling of Pittman v. Eyrand.
LEMMON, Judge (dissenting).
I agree that some meaning should be ascribed to the rewording of R.S. 23:632 in 1964. A reasonable interpretation of the legislative intent was to allow attorney's fees in suits which successfully recovered "any unpaid wages whatsoever", although the overall circumstances might not warrant imposition of a penalty. The apparent purpose of such a statutory change would be to infuse some economic justification into a "well-founded" claim for a small amount of unpaid wages which most competent and busy attorneys would otherwise not find feasible to pursue.
Nevertheless, I disagree that the evidence supports a judgment that the claim was well-founded. Conceding that a trial court's resolution of conflicting testimony must be accorded great weight and should not be disturbed unless manifestly erroneous, I find the only conflict in testimony to be on the point of whether or not Rubenstin *309 had a fixed policy to cover the situation presented here.
If there was such a policy, as claimed by David Rubenstein, it was not communicated to the salesmen. Those salesmen who appeared at trial testified essentially that they decided among themselves the question of allocating commissions in unusual situations where more than one employee participated in a sale.
The salesmen fairly agreed that they "covered" for each other when the salesman who initiated a sale was not in the store at the time a customer returned and required additional service to complete or to save the original sale. Under such circumstances the "initiating" salesman normally received the entire commission, the justification apparently being that each salesman could expect reciprocal treatment from the other. Furthermore, those witnesses also agreed that the "completing" salesman under such circumstances would be entitled to the full commission on any accessories or additional items purchased by the customer returning to the store in connection with the original purchase.
Such an "in house" arrangement obviously would not apply to a "special order" sale which was consummated by a second salesman after the "initiating" salesman had left Rubenstein's employment. The second salesman could expect no reciprocation in the future from the departed "initiating" salesman.
In the present case the trial judge's basis for awarding LaForte the full 6% commission, according to the reasons for judgment, was that "Plaintiff agreed to pay to the Defendant 6% commission on all sales" and "Defendant did not consent to have his commissions `split' regarding the sales in question." This reasoning was not a credibility determination, and the reasoning must stand or fall on its legal merit.
I respectfully disagree with the trial judge's reasoning. While Rubenstein did agree to pay LaForte 6% on all sales, it also made the same agreement with Barry Lipscomb, the salesman who consummated the sales after LaForte's employment terminated. And Lipscomb also did not agree to split commissions on those particular sales. How would the reasoning in question apply if Lipscomb had sued for the commissions rather than LaForte?
Since the overall compensation scheme was to pay commissions for successful sales transactions, the equitable disposition of a commission (earned because more than one salesman performed substantial services in completing the successful sale) would require allocation of the commission according to the contribution of each salesman to the success of the sale under the circumstances of the particular case. The record established without contradiction that "special order" sales often required as much sales work in completing the sale as in initiating the sale, and sometimes more. The record further established that Lipscomb (and David Rubenstein) made several trips to Baton Rouge to complete the particular sales after LaForte left Rubenstein's employment.
In my opinion LaForte failed to prove that, under the circumstances of this particular case, he was entitled to the full commission. On the other hand, Rubenstein's even division of the commission (to its own possible detriment because of LaForte's outstanding and still uncollected debts) was the more reasonable and equitable solution to the problem according to the terms of the employment contract between Rubenstein and all of its salesmen.
LaForte received half of the commission and sued for the other half. The record does not support his entitlement to both halves, notwithstanding any credibility determination by the trial judge of the conflicting testimony as to whether a fixed policy controlled the situation. His suit should be dismissed.
NOTES
[1] § 631. Discharge or resignation of employees; payment within 24 hours after termination of employment

"It shall be the duty of every person, employing laborers or other employees of any kind whatever when discharging any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether the employment is by the day, week or month, upon demand being made upon the employer by the discharged or resigned laborer or employee at the place where the employee or laborer is usually paid."
"§ 632. Liability of employer for failure to pay; attorney's fees
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety day's wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well founded suit for any unpaid wages whatsoever be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation. As amended Acts 1964, No. 422, § 1."