SCHOTT, Judge.
This suit arose out of a contract entered into on March 11, 1970, between plaintiff, Horatio S. Eustis, and defendant, Jean-Joseph Moons, who were competing life insurance agents. Eustis was employed by George A. Sorensen, Jr., general agent for Connecticut Mutual Life Insurance Co., and Moons was employed by Roland J. Hymel, Jr., general agent for State Mutual Life Assurance Company.
Eustis and Moons had been competing for a large package of insurance to be sold in connection with a pension plan being considered by William B. Coleman Co., Inc., when they decided to write the business jointly in such a way that the commissions would be divided between them. This agreement was made with the full approval of Sorensen and Hymel, and on March 11, 1970, was reduced to a written contract in *1345 which Eustis and Moons agreed to divide the commissions equally and to split equally all acceptable expenses incurred in the acquisition and servicing of the business. Sorensen and Hymel were not parties to this agreement although it was witnessed by Sorensen. However, in connection with the agreement Hymel and Sorensen on the same day entered into an agreement whereby they would split all of the general agency commissions which would be payable by their respective companies.
As the pension plan unfolded and numerous life insurance policies were issued on employees of Coleman it developed that William B. Coleman, Jr., on whom a large policy was to be written was a rated risk whose premium amounted to $23,711.55 for a State Mutual policy. It was possible for Hymel to give Eustis a contract as a broker for State Mutual with the result that the names of both agents would be on the policy and the commissions would be paid direct to both. But Eustis agreed to have the policy issued in Moons’ name alone so that Moons would have a chance at membership in the Million Dollar Round Table, a prestigious award for an insurance agent.
By the time Coleman’s policy was issued Eustis had discussed the matter with Soren-sen in detail and the latter felt that some additional assurance should be given that Eustis would receive his share of the forthcoming commissions on this policy. After discussing the matter with Hymel, Sorensen received a letter on September 3, 1970, on the letterhead of State Mutual, “The Roland Hymel, Jr. Agency,” providing as follows:
“As per our discussion in your office regarding the above named case, it is understood and agreed that 50% of the commissions on Mr. Coleman, Jr.’s policy, both first year and renewals are guaranteed by the undersigned; less any expenses so agreed to on my letter dated March 11, 1970.
“This letter will serve as Mr. Eustis’s vested interest.”
The letter was signed by Jean J. Moons and was “witnessed” by Hymel, i. e., signed by him in that capacity.
Moons had entered the life insurance business on July 15, 1969, when he was employed by Hymel under two separate contracts, one entitled “Career Agent’s Agreement” and the other “Career Builder Supplemental Agreement.” The former provided that his compensation would result exclusively from commissions he earned on sales of life insurance, while the latter provided for a guaranteed salary against commissions earned by the employees together with a training allowance. On July 23, 1971, Moons terminated his contract with Hymel and by that time his guarantee under the contract had reached $1500 per month.
Initially the arrangement between Eustis and Moons was carried out without any difficulty and Eustis received $1437 as his share of the commissions on the Coleman policy. However, about July of 1970, Moons advised Eustis that he was charging Eustis for 50% of an accountant’s fee, a coordinator’s fee and special risk research, amounting to a total of $5712.10 of which Eustis’ share would be $2856.05. According to Moons, these expenses were of the type contemplated in the language of the March, 1970, agreement as “acceptable expenses,” but according to Eustis these were not contemplated in the agreement and were absolutely unacceptable to him. His appreciation of acceptable expenses would include such items as lunch for the clients but nothing of the magnitude of the expenses which Moons proposed to charge him.
By the time Moons left Hymel’s employment a total of $23,711.55 of commissions had been paid to Moons by State Mutual on the Coleman policy.
Originally, Eustis brought suit against Moons alone but subsequently joined Hymel and State Mutual, urging that Hymel had made himself a party to the agreement made by Moons and that both State Mutual and Hymel were bound as principals for the amount due him by their agent.
Moons filed a third-party demand against Hymel, claiming renewal commissions on policies he sold during his employment by Hymel and the $5600 which he paid as *1346 accountant’s and coordinator’s fees and which he had attempted to deduct from the payments due Eustis. He also claimed $1500 as his final monthly salary for July, 1971, and $387 for the amount remaining in his reserve account with Hymel. Moons also joined State Mutual as a third-party defendant seeking to recover the renewal commissions.
In the judgment of the trial court Eustis was awarded $11,855.77 against Moons and Hymel in solido, subject to a credit for the $1437 which had been paid to Eustis, and $5,000 paid to Eustis by State Mutual in settlement of the case against it. No interest was awarded Eustis under this judgment. On the third-party demand of Moons he was awarded $700 for the balance of the salary due him for July, 1971, together with statutory penalties of $2100 and attorney’s fees of $500. Moons was also awarded $387 against Hymel representing the balance in the escrow account. Moons’ claims for the accountant’s and coordinator’s fees he incurred and the renewal commissions were dismissed.
Prom this judgment Hymel has appealed and Eustis and Moons have answered the appeal.
The first issue to be considered is the liability of Hymel to Eustis on the main demand. In resolving that issue against Hymel the trial judge based his judgment on the letter from Moons to Sorensen dated September 3, 1970, and an inter-office memorandum by Hymel to Moons on July 13, 1971. The latter inter-office memorandum was written just ten days prior to the date of the termination of Moons’ employment by Hymel and consisted of five one-sentence items addressed to Hymel, pertaining to such things as a meeting which Moons evidently missed and the cleaning of his office. The message did contain as Item No. 2, the following: “The debt owed to the Connecticut Mutual Agent is my debt. They can call me for this.”
In his reply to Moons, Hymel answered Item No. 2 as follows:
“The debt owed to the Connecticut Mutual Agent is also my debt. If you recall, I was a party to the contract. If I were not a party to the contract, I would not bring this matter to your attention.”
In measuring the effect of Hymel’s memorandum of July, 1971, it must be understood that this memorandum cannot provide the foundation for any liability by Hymel in favor of Eustis. Eustis’ claim is based on a contract entered into fifteen months previously and by the time the memorandum was written that claim had reached full maturity. As to the other exhibit on which the trial judge based his judgment against Hymel, this letter of September 3, 1970, was written by Moons to Sorensen and Hy-mel’s signature is on the letter in the capacity of a witness. The only foundation for any liability to Eustis for the commissions is the March, 1970, agreement, the only parties to which were Eustis and Moons, and which does not purport to make Hymel a party. All of the commission was paid to Moons. Hymel got no part of the commission whatsoever.
We have concluded that Hymel did not become obligated to Eustis by virtue of the contract of March 11, 1970, because he was not a party to same. He did not make himself a party to that contract in the letter of September 3, 1970, because he signed that letter only in the capacity of a witness. We are unable to perceive a legal basis for liability by Hymel to Eustis because of the memorandum Hymel wrote in July, 1971, to Moons. Since there was no contractual relationship between Eustis and Hymel prior to the writing of this memorandum which would provide a basis for Hymel’s liability Eustis must show that some new contract was entered into between Eustis and Hymel by virtue of this memorandum.[1] Eustis was not a party to this memorandum and there is no evidence whatsoever to show that any negotiations or contact between Eustis and Hymel led to Hymel’s writing this memorandum to Moons. For Hymel to become liable to *1347 Eustis for a sum in excess of $10,000 there must be some consideration, and this record is devoid of any showing of consideration for such a contract.
We have considered the possibility of Hy-mel’s liability to Eustis on the basis of suretyship principles but the letter of September, 1970, falls far short of the requirement that suretyship be expressed, LSA— C.C. Art. 3039. Far from being expressed it ostensibly contains Hymel’s signature only in the capacity of a witness to the signature of Moons.
We have concluded that the judgment in favor of Eustis on the main demand against Hymel is not supported by the facts or the law and will be reversed.
Returning to Hymel’s appeal from the judgment in favor of Moons, it is Hy-mel’s contention that Moons was not an employee of Hymel but rather an agent of State Mutual. In support of this argument Hymel relies principally on the manner in which Moons received his compensation. The evidence shows that all of the commissions earned by Hymel’s agents were sent in one check by State Mutual to Hymel but the disbursement of these commissions to the individual agents were made by a “bonded cashier” to the agents based on a computer printout provided the cashier by State Mutual. These funds were never co-mingled with Hymel’s funds and statements which accompanied the checks received by Moons and the other agents were prepared by State Mutual. No taxes and Social Security were withheld from these agents’ checks by Hymel. These circumstances applied to the agents in general, including Moons who was a trainee working under the special Career Builder Supplemental Agreement.
However, it seems clear that as a trainee Moons was subject to Hymel’s supervision. Hymel retained the right to hire and fire. In any event, the Career Builder Supplemental Agreement contains the following provision which seems to settle the question:
“The Agent [Moons] further understands that during the salary period of this agreement as described in this Part I, the Agent will be considered an employee of the General Agent [Hymel] and this employment will be subject to such relationship.”
In view of this language in his own contract Hymel can hardly be heard to deny that Moons was his employee.
The trial court found and the evidence supports the finding that Moons was due a balance of $700 on his salary when he resigned. Moons testified that he did not receive either payment of $750 during the month of July. Hymel admitted that he did not pay the second $750 because he had advanced to Moons on his personal account the sum of $800 in July, 1969, and June, 1970, so that he arranged for the final check which was originally payable to Moons by State Mutual to be paid to him. Hymel did not deny that the first check of $750 payable on July 15 to Moons was not paid to him but merely surmised that he must have written a check to Moons for this amount. A check dated July 15 for $715.19 and one dated July 30 for $750, both drawn by State Mutual for Moons’ account were payable to and negotiated by Hymel. This evidence was sufficient to support the trial judge’s conclusion that Moons was due another $700. Similar evidence also established that a balance of $387 in Moons’ escrow account was never paid to him by Hymel.
The final question to be resolved in connection with the judgment against Hy-mel on the third-party demand of Moons concerns the imposition of the penalties and attorney’s fees under the provisions of R.S. 23:631 and 632. In Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4th Cir. 1975), this court reiterated the jurisprudence to the effect that the statute prescribing penalties for unpaid wages is a penal statute which must be strictly construed and yields to equitable defenses. We distinguished between the conditions necessary for the application of the penalty as opposed to attorney’s fees and held that even though there was an equitable basis for the disallowance of the penalty reasonable attorney’s fees were due under R.S. *1348 23:632 simply because the employee filed a well founded suit for his unpaid wages. We reach the same conclusion in this case. Moons is clearly entitled to attorney’s fees since his suit for wages is well founded, but we do not agree with the trial court that the circumstances of this case did not provide an equitable basis for Hymel to withhold payment of the $700 claimed by Moons.
As a result of the breach of contract by Moons, Hymel found himself being sued for over $10,000. The only basis on which Hy-mel could conceivably be cast in judgment in favor of Eustis was on the theory that Hymel had made himself surety for Moons’ debt since Hymel was not a party to the original contract between Moons and Eus-tis. The trial judge apparently applied suretyship principles since his judgment was based on two documents which were signed by Hymel after the contract between Moons and Eustis had already been made. If Hymel was in the past or is in the future made to pay Moons’ debt to Eustis he becomes subrogated to the rights of Eus-tis and has a valid claim against Moons. It would hardly be equitable to require that Hymel pay Moons $700 and then at some future date be required to chase after Moons for an amount in excess of the $10,-000 for which he might be cast in judgment in favor of Eustis. Under these circumstances and considering the jurisprudence we have concluded that Moons is not entitled to statutory penalties, and that part of the judgment on the third-party demand of Moons will be reversed.
We turn next to the answer to the appeal filed by Moons and his contention that he is entitled to a judgment against Hymel for accounting and coordinating fees in the amount of $5600 and for renewal commissions accruing after the date his employment was terminated. With respect to the fees, when Moons was negotiating the contract with Coleman he utilized the services of a certified public accountant and of Estate and Pension Planning, Inc. a company owned by Hymel. There is no dispute that Moons paid the fees totaling $5600 and ultimately his claim for recovery of this item against Hymel was based on his own testimony that Hymel had agreed to pay these amounts. This testimony was flatly contradicted by Hymel, and in the final analysis the question was resolved by the trial judge on credibility in favor of Hymel as opposed to Moons. On appeal, there is no basis for us to do anything but affirm the trial judge on this issue.
Finally, Moons’ claim for renewal commissions is settled against him by the Career Builder Supplemental Agreement which provides under “termination” as follows: [2]
“In the event of the termination of this Supplemental Career Builder Agreement for any reason other than the death of the Agent or the successful completion of this agreement, no further payment of any kind shall be made, any provisions in the Career Agent’s Agreement to the contrary notwithstanding . . . ”
The trial judge held that these provisions precluded Moons from recovering this item and we agree with that conclusion.
Eustis answered the appeal because no interest was awarded him under the judgment. We have concluded that his position has merit and accordingly his judgment against Moons will be amended to include legal interest from date of judicial demand until paid.
Accordingly, the judgment in favor of Horatio S. Eustis and against Roland J. Hymel, Jr. is reversed and set aside, and there is judgment in favor of Roland J. Hymel, Jr., dismissing the claim of Horatio S. Eustis at his cost.
The judgment in favor of Horatio S. Eus-tis and against Jean-Joseph Moons is affirmed but is amended to include legal interest from date of judicial demand until paid.
*1349 The judgment on the third-party demand in favor of Jean-Joseph Moons against Roland J. Hymel, Jr. in the sum of $700, together with statutory penalties and attorney’s fees, is amended so as to delete statutory penalties in the amount of $2100, and the judgment in favor of Jean-Joseph Moons against Roland J. Hymel, Jr., in the sum of $387, with legal interest from date of judicial demand until paid, is affirmed.
The judgment in favor of State Mutual Life Assurance Company of America against Jean-Joseph Moons, dismissing his third-party complaint, is affirmed. All costs of this appeal are to be paid by Jean-Joseph Moons.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND RENDERED.

. The record is devoid of any evidence of detrimental action or inaction by Moons in reliance on this statement, which might conceivably form the basis for estoppel.

. Moons’ contention that he was no longer under the Supplemental Career Builder Agreement for purposes of the renewal commissions is directly contrary to his contention that he came under that agreement in order to qualify as an employee and thus be entitled to penalties and attorney’s fees.