489 So.2d 435 (1986)
Joseph Earl MEEKS, Plaintiff-Appellee,
v.
HUNTINGTON SCHOOL, INC., Defendant-Appellant.
No. 85-608.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Rehearing Denied June 25, 1986.
Brent S. Gore, Ferriday, for defendant-appellant.
James W. Berry, Rayville, for plaintiff-appellee.
V. Russell Purvis, Jonesville, for defendant-appellee.
Before STOKER, KING and COX,[*] JJ.
STOKER, Judge.
Huntington School, Inc. appeals from a judgment ordering it to pay three months' salary to its former principal, head coach and athletic director, Joseph E. Meeks. Meeks sued Huntington to collect some $10,000 allegedly due under his employment contract. He was paid through May, *436 1983, but claims his salary for June, July and August, 1983.
Meeks' contract stated that he was to receive $25,000 for the 1981-82 school year. His 1982-83 salary was to increase in the same proportion as that of Huntington's teachers. The trial court found that the contract was modified by Meeks' acceptance of a $3,500 increase for 1982-83, instead of the 30% increase granted to teachers. Thus, the court concluded that Meeks' 1982-83 salary was $28,500.
The trial court also concluded that Meeks had fulfilled all of his contractual duties through the expiration of his term in August, 1983. Therefore, Meeks was awarded the three unpaid installments of his $28,500 salary. The judgment also provided that interest would accrue on each month's salary from the date it was due.

SPECIFICATION OF ERRORS
On appeal no one disputes the finding of an oral modification of the employment contract, so the issue concerning the amount of Meeks' 1982-83 salary is now final. Huntington assigns two errors: (1) The trial court incorrectly held that Meeks had fulfilled all of the duties of his position, entitling him to salary for the summer months. (2) The trial court erred in ruling that judicial interest should run from the time the salary was due, rather than from the date of judicial demand.

SALARY DUE TO MEEKS
Whether or not Meeks was entitled to his full salary requires the answering of two questions: What was the effective date of Meeks' resignation, and did Meeks perform all of the duties of his position through the August termination of his contract? Appellate review of the trial judge's determinations in these factual inquiries are subject to the manifest error standard.
Meeks presented his letter of resignation to the Huntington board of directors on May 17, 1983, effective as of "the end of the school year." Evidently, there were three possible constructions of "the end of the school year." Meeks considered it to mean the end of August, when his contract expired. Some board members understood him to mean May 27, the last day of school. Meeks' successor made a note that Meeks had said he meant June 1. The minutes of the May 17 meeting reflected that the board was uncertain just when Meeks planned to leave, and put off a determination until a later meeting. The trial judge concluded that the evidence showed Meeks' intent to remain on the payroll through August. We find sufficient evidence to support his conclusion.
The trial judge stated that Meeks had performed "the vast proportion" of his duties before May, and that any summer activities required of him were "relatively insignificant." In fact, Meeks' official duties were never set out. Meeks' successors told him that they would prefer to plan the future activities that would take place during their tenures. This arrangement undoubtedly was more beneficial to Huntington than allowing Meeks, who had been hired as head coach at a rival school, to plan Huntington's athletic strategies for the following year. Meeks began making plans to occupy his new position, though he drew no salary at his new school until September. Meeks offered his assistance to the Huntington staff whenever they needed it. The headmaster did call him twice, but he evidently sought only Meeks' advice. Meeks was never asked to return to Huntington to help the new staff.
Huntington knew that Meeks planned to vacate the headmaster position after August 1983, and his successor had been hired in February. At the May 17 meeting Meeks announced that he intended to resign as head coach and athletic director as well. A new coach was hired immediately. The new headmaster was due to begin work as of June 1. Until May 17, Huntington had planned to carry both Meeks and the new principal on its payroll through August. It is not illogical to conclude that a similar overlap was anticipated in hiring the new coach.
*437 We believe that Huntington understood that, considering the nature of the school year, the plaintiff's work load would not be evenly balanced during the school year. In fact, it is clear that normally little was to be done during the summer months. Meeks' contract provided that he would be "employed for a period of time each year necessary to perform the duties set forth above, but that HUNTINGTON shall pay MR. MEEKS over the full twelve (12) month period." We find no clear or manifest error in the judge's conclusion that Meeks performed all of his required duties, and that he is therefore entitled to recover his full year's salary. (We attach to this opinion marked as Appendix I, not to be included in the official report of this case, that portion of the trial court's reasons for judgment covering this issue.)

INTEREST
The judgment provides for interest on each salary payment from the date it became due. Huntington argues that under LSA-C.C. art. 2924, interest should run from judicial demand.
Two Civil Code articles are involved in an apparent jurisprudential conflict as to when legal interest attaches in a contract case. LSA-C.C. art. 2924 states:
"A. Interest is either legal or conventional.
B. (1) Legal interest is fixed at the following rates, to wit:
(a) At twelve percent per annum on all sums which are the object of a judicial demand, whence this is called judicial interest: ...."
LSA-C.C. art. 2000 provides:
"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum."
In another case involving an employment contract, the Fourth Circuit awarded interest on three years of payments from the respective due dates of the payments. Calhoun v. Louisiana Materials Co., 206 So.2d 147 (La.App. 4th Cir.1968), writ denied, 251 La. 1050, 208 So.2d 324 (1968). The court cited former Civil Code art. 1938; the substance of which is now contained in LSA-C.C. art. 2000.
Interest has been awarded from date of judicial demand in other contractual situations. In Mitchell v. First National Life Insurance Co. of La., 236 La. 696, 109 So.2d 61 (1959), where cash box shortages were erroneously withheld from an employee's paycheck, the Supreme Court agreed with the trial judge that interest was owed from the date the debt was due.
The "date due" rule has been applied in suits on open accounts and for balances due for services (Messina v. Koch Industries, Inc., 267 So.2d 221 (La.App. 4th Cir. 1972), affirmed, 283 So.2d 204 (La.1973), Bert's Boat Works, Inc. v. Cuccia, 278 So.2d 134 (La.App. 4th Cir.1973)); suits for sums due in contracting jobs (White v. Rimmer & Garrett, Inc., 360 So.2d 914 (La.App. 3d Cir.1978), Teledyne Movible Offshore v. C & K Offshore, 376 So.2d 357 (La.App. 3d Cir.1979), National Roofing & Siding Co. v. Gros, 433 So.2d 403 (La.App. 4th Cir.1983)); redhibition (Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978)); and child support arrearages (Serrate v. Serrate, 472 So.2d 137 (La.App. 5th Cir. 1985), Chaudoir v. Chaudoir, 430 So.2d 280 (La.App. 3d Cir.1983)).
We find conflict with this pattern in Alexander v. Burroughs Corp., supra, in which the Supreme Court stated:
"The decisions involving interest on sums recovered by suit are naturally myriad and because of their great number, if for no other reason, inconsistent. There is, however, a thread of consistency among the cases. Article 554 of the Louisiana Code of Practice of 1825 provided that interest should not run on accounts or unliquidated claims, but was repealed by La.Acts 1839, No. 53 § 1. This Court once commented,
"We have uniformly held that, since the passage of that act, all sums due *438 on contracts bear interest from judicial demand, even where none has been stipulated, and the demand is unliquidated." Sullivan v. Williams, 2 La. Ann. 876, 878 (1847).
See also Petrie v. Wofford, 3 La.Ann. 562 (1848); Calhoun v. Louisiana Materials Co., 206 So.2d 147, 151-52 (4th Cir. 1968), writ denied, 251 La. 1050, 208 So.2d 324 (1968); Friede v. Myles Salt Co., 177 So. 105, 108 (Orl.La.App.1937)."
We have some doubt that this view represents the "consistent thread" of the jurisprudence. Sullivan v. Williams, cited in Alexander, provides no authority for its assertion, and we find a strong series of cases before and after Sullivan in which interest in contract cases is awarded from the date the debt becomes due. See Brownson v. Fenwick, 19 La. 431 (1841); Burton v. Chaney, 3 La.Ann. 338 (1848); Behan v. City of New Orleans, 1 Man.Unrep.Cas. 215 (1880); Davie v. Martin Davie & Co., 3 Orleans App. 468 (1906).
Even assuming that Alexander was a correct interpretation of the law and jurisprudence, we find other reasons not to apply it to the case before us. First, Alexander involved a suit in redhibition, which requires a different analysis than a contract case. The cited passage was not necessary to the holding of the case. We noted this distinction in Magnolia Const. Co., Inc. v. Causey, 421 So.2d 990 (La.App. 3d Cir.1982), writ denied, 426 So.2d 177 (La.1983). Citing the same cases used as authority in Alexander, we held in the Magnolia case that interest in a contract case should run from date of judicial demand. After reconsideration of the issue, we come to the opposite conclusion, and we decline to follow the holding of that decision.
Additionally, we note that although LSA-C.C. art. 2000 is based upon former Articles 1935 and 1938, the substance has been rewritten extensively by the legislature. In giving the amendment meaningful effect, we feel that it further clarifies the relationship between Article 2000 and Article 2924. While the latter fixes the percentage of interest on sums which are the object of judicial demand, and labels this sum "judicial interest," it makes no provision as to when judicial interest shall begin to run. Article 2000 does so provide: interest runs from the time the debt is due.
We conclude that the code articles as well as the weight of the jurisprudence dictate that interest on each salary payment should run from the time it became due. Therefore, we affirm the trial court's provision for interest.

CALCULATION
We note that an error in calculation was made in the judgment. The trial judge concluded that Meeks was entitled to three installments which would bring the total salary received to $28,500. The judgment awards Meeks $7,175, or three payments of $2,391.67.
At an annual rate of $28,500, Meeks was entitled to $2,375 per month. He received nine checks in that amount. He was entitled to three more payments at that same monthly rate, for a total of $7,125, not $7,175. We modify the judgment to reflect this correction.

CONCLUSION
In accordance with the above discussion, we recast the judgment as follows:
It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Joseph Earl Meeks, and against the defendant, Huntington School, Inc., in the full sum of $7,125, payable as follows:
One installment of $2,375 bearing interest at the legal rate from July 1, 1983 until paid;
One installment of $2,375 bearing interest at the legal rate from August 1, 1983 until paid;
One installment of $2,375 bearing interest at the legal rate from September 1, 1983 until paid.
It is further ordered, adjudged and decreed that all costs of the trial court and *439 the appellate proceedings are to be paid by defendant.
MODIFIED, AND AMENDED AS MODIFIED.

APPENDIX I
The following excerpt is taken from the trial court's reasons for judgment in the foregoing case:
"The record in this case shows that Plaintiff completely satisfied his contract and duties without complaint from the Defendant up to approximately the first of June, 1983. This covered the entire time that students were present on the campus of the Defendant school and classes conducted. During this time the vast proportion of the duties to be performed by the Defendant under contract had already been taken care of. The record indicates there were some duties to be carried on during the three months summer vacation, but these were relatively insignificant compared to the activities during the remaining portion of the school year.
"Defendant takes the position that Plaintiff resigned at the end of May, 1983 and was not entitled to the other three installments on his salary. The facts indicate that Plaintiff had indicated his intention to resign at the time the salary dispute first came up. Defendant advised the Board by letter that he would resign effective at the end of the 1982-1983 school year. At this time Plaintiff had made arrangements to be hired by the Riverfield Academy at Rayville, Louisiana, a fact which was made known to the Defendant's Board of Directors.
"Defendant had already hired a new principal to take Plaintiff's place and there was some negotiations which did not proceed very far toward retaining Plaintiff as Head Coach and Athletic Director, but these soon terminated and a new Head Coach and Athletic Director was also hired. Plaintiff made it known to the Defendant that he would be available if needed during the summer period for any matters that required his attention. He was told by the new administration that he would not be needed and if he was required he would be called.
"It is obvious from the testimony of Defendant's witnesses that Plaintiff had no precise duties during the summer school period, and that he would be available if he was called upon. This was testified to specifically by Director Michael Rabb with the stipulation that there were four others who would testify similar to Directors Oliveaux and Rabb.
"There was some evidence that the new Principal attempted to contact Plaintiff but was unable to reach him. However, these efforts at contacting the Plaintiff did not seem to be very persistent in that Plaintiff was never called at his home after office hours, his wife was never called at her work address number and there was never any written correspondence to Plaintiff asking for his assistance or help. Defendant school did not suffer during this time because it obviously had a new Principal who wanted to hire his own people and a new Coach and Athletic Director who wanted to prepare his team for their opponents, one of which, would be the Riverfield Academy who was to be coached by the Plaintiff. It was obvious that his services in that respect would not be needed.
"Finally, the Defendant's position that the Plaintiff resigned on May 17th, 1983 is further weakened by the fact that the exact date of resignation of the Defendant [sic] was not decided by the Board. Obviously, the Board Directors did not have the right to unilaterally decide on the date of Plaintiff's resignation, but this indicates that there was doubt by the Defendant itself as to when Defendant's [sic] resignation was effective.
"Accordingly, under all the circumstances that exist here, it is my opinion that Plaintiff performed all duties under the contract for the 1982-1983 school year, and that he is due the entirety of the compensation required by the contract for that term...."
NOTES
[*] Ronald D. Cox, Fifteenth Judicial District Court, Parish of Lafayette, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.